EDITH L. MUNDAY, (Plaintiff) Appellant, v. BENJAMIN F. AUSTIN, ISABELLA FAIRFAX, R. W. POERTNER, Trustee Under a Certain Deed of Trust Dated July 9th, 1940, and Recorded in Book 5920 at page 441 of the Recorder's Office of the City of St. Louis, State of Missouri; and AETNA REALTY COMPANY, a Corporation, (Defendants) Respondents.—No. 40996.—218 S. W. (2d) 624.

Court en Banc, February 14, 1949.

Rehearing Denied, March 14, 1949 in Per Curiam Filed.

*Boggiano & Hessel, Meyer Hessel* and *William Healy* for appellant.

*Dubinsky & Duggan* and *McLaran & Garesche* for respondents.

[625] ELLISON, J.—This is an appeal from the circuit court of the City of St. Louis, wherein the plaintiff-appellant seeks to enjoin the [626] forecloseure of a deed of trust on land, and to cancel the same and the notes secured thereby, on the ground that they were without consideration. The circuit court found for the respondent-defendants and dismissed the appellant's petition. On her appeal to the St. Louis Court of Appeals, that court transferred the cause to this court [210 SW. (2d) 714] on the ground that it had no appellate jurisdiction, the title to real estate being involved within the meaning of Art. V, Sec. 3, Const. Mo., 1945.

That ruling was made on authority of Nettleton Bank v. McGauhey's Est., 318 Mo. 948, 953-4(3), 2 SW. (2d) 771, 775(8), which held that a suit to foreclose a mortgage does not involve title to real estate in the constitutional sense, because in such instances the basic title is conceded to be in the mortgagor, and the effort is merely to enforce the mortgage lien resting thereon, whereas a suit to cancel a mortgage on the ground of fraud would involve title because it would destroy the mortgagee's "muniment of title", citing Hanna v. So. St. Joseph Land Co., 126 Mo. 1, 10(1), 28 SW. 652, 653(1). On the other hand it has been consistently held that where a suit seeks to cancel or enjoin the foreclosure of a mortgage on the ground that the mortgage debt has been paid, the proceeding does not involve title, and is simply a dispute over the mortgage debt. Loewenstein v. Queen Ins. Co., 227 Mo. 100, 127(9), 127 SW. 72, 84; Vandeventer v. Flordia Savings Bank, 232 Mo. 618, 622 et seq. (2), 135 SW. 23, 24.

From these decisions it will be seen that where the essential and inherent validity of the mortgage itself is in dispute, title is involved. In other words, the mortgage is regarded as a part or segment of the title, constituting a cloud on the title if it is invalid. But if the dispute is merely over the foreclosure of the mortgage or the indebtedness secured thereby, it does not involve title. At least recent decisions have reviewed this question and so held: Peters v. Kirkwood

Fed. Sav. & L. Ass'n, 344 Mo. 1067, 1070(2), 130 SW. (2d) 507, 508-9(1-2); Castorina v. Herrmann, 340 Mo. 1026, 1030(1), 104 SW. (2d) 297, 299(1). In the latter case the question decided was the same as that presented here—whether this court has appellate jurisdiction on the ground that title to real estate is involved when it is sought to cancel a mortgage on the ground that it was without consideration.

In this case the facts were as follows. In July, 1940, the defendant-respondent Isabella Fairfax owned the land involved, and executed thereon the duly recorded deed of trust and secured notes in suit, the principal note and last interest note being due in three years after date. The trustee in the deed of trust was defendant-respondent Poertner, who was also cashier of a bank. The notes were made payable to the defendant-respondent Austin. He indorsed them in blank and delivered them and the deed of trust to Poertner's bank as collateral to secure his indebtedness to it. The bank so held them for over three years.

During the intervening time in July, 1942, Austin was adjudged a bankrupt on the petition of third parties. In the bankruptcy proceeding his verified schedules and his sworn transcribed testimony before the referee stated that the instant notes and deed of trust were executed to him by the respondent Fairfax as accommodation paper to be used in securing his indebtedness to the above mentioned bank, and did not represent any indebtedness from her to him. This evidence from the bankruptcy records is the sole proof on which the plaintiff-appellant Munday relies, to establish as a judicial admission that the notes and deed of trust were without consideration. Respondents Austin and Fairfax did not testify in the instant cause.

In June, 1943, independent of the bankruptcy proceeding, the appellant Munday purchased for $430 the land encumbered by the deed of trust, with knowledge thereof, at an execution sale under a judgment in favor of a third party antedating the bankruptcy. The judgment was against the respondent Austin as judgment debtor, and the respondent Fairfax as surety on his appeal bond. The sheriff's deed recited that it assigned, transferred and conveyed to appellant Munday "all the right, title, interest, claim, estate and property of the [627] said Isabella Fairfax, of, in and to" the land.

Three months thereafter, on September 20, 1943, Poertner, as trustee in the deed of trust, at the request of the "legal holder" of the secured notes, which were past due and in default, started foreclosure procedure proceedings by advertisement under the power of sale clause in the deed of trust. At that time the bank still held the secured notes as collateral for respondent Austin's indebtedness to it. But four days later Austin paid the bank $2000 on his indebtedness and it surrendered the notes and deed of trust to him. Poertner testified that Austin thereafter told him he "was going to foreclose the deed of

trust,"[1] and the publication of the foreclosure notice was not stopped. Thereupon appellant Munday filed the instant injunction suit in October, 1943, against Poertner as trustee, and the respondents Austin and Fairfax. The Aetna Realty Company, a corporation, also was joined as defendant in an amended petition, which alleged that Austin was the dominating stockholder thereof and claimed to have transferred the deed of trust and notes to it. But all the defendants by separate answers denied these facts and there was no proof of them. As the record stands Austin was in possession of the notes and deed of trust when the suit was filed.

The chancellor took the cause under advisement and rendered an informal memorandum opinion finding in favor of the defendant-respondents, dismissing the plaintiff-appellant's petition and dissolving the temporary injunction on the grounds: "that the plaintiff has failed to make a case in that having acquired the property subject to the deed of trust and knowing of the existence of said deed of trust at the time that she acquired it and not having been a creditor of the defendant, Benjamin F. Austin, or any of the other principal defendants, that she has no right to complain nor to attempt to attack the validity of the deed of trust in question."

As will be seen, the necessary effect of the chancellor's ruling was that since appellant Munday was not a *creditor* of respondents Austin and Fairfax, she has no right as execution purchaser to challenge and seek the cancellation of the deed of trust on the land after she had purchased it with notice of that encumbrance-and this regardless of whether the deed of trust and secured notes were without consideration as between those two respondents, and notwithstanding the fact that the bank had surrendered the notes and deed of trust back to respondent Austin after maturity and before appellant filed this suit. This is the ultimate issue in the case. We shall return to it after considering other issues raised by the parties.

First, we concede and hold, as respondents contend, that under Sec's 3022(2) and 3040,[1] the secured notes themselves prima facie imported a consideration, although they did not contain the phrase "for value received", or equivalent words. Secondly, it will also be conceded that in view of this presumption the burden was on appellant, and she was not entitled to a decree canceling the notes and deed of trust except upon evidence clearly preponderating in her favor on the issue of no consideration. Hamilton v. Steininger, 350 Mo. 698, 713(3), 168 SW. (2d) 59, 67(2).

As heretofore stated, the only evidence adduced by appellant to prove the notes and deed of trust were without consideration consisted of respondent Austin's admissions in his verified schedules and his testimony before the referee in the bankruptcy proceeding against

---

[1]References to our statutes are to R. S. 1939 and same section numbers in Mo., R. S. A. unless otherwise indicated.

him. In these he stated that respondent Fairfax was not indebted to him and that she executed and delivered the notes and deed of trust on her land to him as accommodation paper for his use as collateral securing his indebtedness to the bank. Respondents' brief contends: (1) that this evidence "was *insufficient* to overcome the strong presumption of consideraton"; (2) that Austin's admissions were made in the summer of 1942" before he had become the owner of the notes," they being held at the time by the bank on a valuable consideration as [628] collateral security for Austin's debt to it; (3) and before appellant Munday had purchased the land encumbered by the deed of trust at the execution sale the following summer of 1943.

Looking to the first of these three contentions, that appellant's evidence was "insufficient", it is generally held that inventories, schedules and records in bankruptcy constitute judicial admissions, and may be introduced in evidence even in another proceeding in another court and where the parties are not identical.[2] However, in these latter instances the admissions are not conclusive and may be explained or contradicted,[3] and sometimes may be altogether incompetent as hereinafter discussed. But both the written schedules filed by a bankrupt and his examinaton as to his property are required by law to be under oath.[4] In the present case the admissions were not contradicted, the respondents having failed to introduce any evidence at all. So the question is whether respondent Austin's foregoing admissions in the bankruptcy proceeding were sufficient, standing alone, to establish appellant Munday's contention that the notes and deed of trust were without consideration, as between respondent Fairfax and respondent Austin.

On the question as to the *weight* of such admissions, the broad statement is made in 22 C. J., p. 424, §507, that "an admission, whether oral or in writing, is evidence of a highly satisfactory character. Being presumed to be, it dispenses with the necessity of any other proof of the fact admitted. . . . In the absence of opposing evidence, it is sufficient to establish the fact admitted . . ." This excerpt is quoted in Wells v. Wells (Mo. App.) 48 SW. (2d) 109, 111.

More restrictively, 31 C. J. S., p. 1178, §382a states that oral, unsworn, extra-judicial statements are generally regarded as weak evidence. But it goes on to say that an admission "if deliberately made in view of all the facts to which it relates and clearly proved, and if sufficiently clear and definite, . . . is not necessarily weak evi-.

[2]31 C. J. S., p. 1067, Sec. 299, p. 1069, Sec. 300a, p. 1075, Sec. 303a; 22 C. J., p. 329, Sec. 370, p. 333, Sec. 374.

[3]31 C. J. S., p. 1176, Sec. 381f; 22 C. J., p. 423, Sec. 506; 20 Am. Jur., p. 539, Sec. 639, p. 540, Sec. 641, p. 1030, Sec. 1180.

[4]6 Am. Jur., p. 552, Sec. 58, p. 713, Sec. 321; 8 C. J. S., p. 461 et seq., Sec. 39.

dence requiring corroboration, but rather, whether oral or in writing, is evidence of a highly satisfactory character. If voluntarily made, and distinct and unequivocal, admissions against interest are taken or presumed to be true, and dispense with the necessity of any other proof of the fact admitted . . .'' The text then goes on to say ''an admission is to be considered and weighed like other evidence.''

Under the law as thus declared, and in view of our own decisions,[5] we cannot agree with respondents' first contention, that appellant's evidence was ''insufficient.'' We speak now only of the inherent probative value of respondent Austin's admissions. Indeed, under the express terms of our statute, Sec. 3045, the notes and deed of trust necessarily must have been without consideration as between him and respondent Fairfax, since she, as ''accommodation party'' executed them to him as payee and accommodated party, thereby lending him her name ''without receiving value therefor.'' Dickherber v. Turnbull (Mo. App.) 31 SW. (2d) 234, 236(3).

In this connection another question should be considered, although it is not directly raised by respondents. That question is, whether respondent Austin's admissions in the bankruptcy proceeding were binding only on himself in this case, or were also binding on his co-defendant respondent Fairfax. Clearly that would not follow from the mere fact that both were impleaded as joint defendants. 14 A. L. R., Annotation, p. 38: 20 Am. Jur., p. 540, ¦641; J. I. Case Plow Works v. Ross & [629] Co., 74 Mo. App. 437, 442(1). But in this case both respondents were in privity and acting together. They were represented by the same counsel and making the same interrelated defenses. In the bankruptcy proceeding respondent Austin testified in favor of respondent Fairfax when he said she was not indebted to him. She had no reason to cross-examine him there and did not seek to do so here. In these circumstances we think she was bound by his admissions in the bankruptcy proceeding. Bates v. Bates, 94 Mo. App. 70, 73, 67 SW. 932; Bartlett v. K. C. Pub Serv. Co., 349 Mo. 13, 15-21(1), 160 SW. (2d) 740, 741-5(1-9).

Turning to respondents' second and third contentions. They maintain, first, that even though there was no consideration for the notes and deed of trust, as accommodation paper, between respondents Austin and Fairfax, yet there was a consideration for them as between the bank, which held them as collateral, and the respondent Fairfax, accommodation maker, that consideration being the credit extended by the bank to Austin, citing Bank of Moberly v. Meals, 316 Mo. 1158, 1169(9), 295 SW. 73, 77(12). We agree with respondents on that and will go further and say it is true even though the bank *knew* respondent Fairfax was an accommodation maker and had received no

[5]Langan v. U. S. Life Ins. Co., 344 Mo. 989, 997(5), 130 SW. (2d) 479, 483 (6-8), 123 A. L. R. 1409; Warfield v. Lindell, 30 Mo. 272, 287-9(6), 77 Am. Dec. 614.

consideration from Austin, the party accommodated. Bank of Corning v. Consol. School Dist., 227 Mo. App. 523, 530, 54 SW. (2d) 486, 490 (6).

Next, and finally, respondents point out that the foregoing status quo still existed when appellant Munday purchased the land encumbered by the deed of trust at the execution sale on June 24, 1943 —which is true. And on that basis they assert her rights and title in the land as execution purchaser became fixed as of that date, and she could not thereafter assail the deed of trust, as she did do by the instant suit to enjoin its foreclosure in the hands of Austin, and to cancel it and the secured notes. In substance, respondents' theory is that appellant bought only the equity of redemption in the land subject to the deed of trust, and could not thereafter assail it and claim any better title by inurement.

On the other hand appellant Munday points out that the situation of the parties was changed after she bought the land, that change being that on September 24, 1943, respondent Austin paid $2000 on his indebtedness to the bank and it surrendered the notes and deed of trust back to him, whereupon he proceeded with the foreclosure. She insists he could not do that because: (1) his own undisputed admissions in the bankrupt proceeding show that he originally got the notes and deed of trust from respondent Fairfax as accommodation paper without consideration; (2) when the bank later delivered them back to him it was a mere surrender of them as collateral, thereby reinstating his original status as an accommodated holder without consideration; (3) and the surrender furthermore was made by the bank after the notes were past due, in consequence of which, under Sec's 3067 and 3071 Austin did not become a holder in due course, but on the contrary under Sec. 3073 took them subject to the same defenses as if they were non-negotiable, and could have no better title than he had in the beginning as a mere accommodated holder.

There appears to be considerable authority in other jurisdictions supporting respondents' contention that appellant Munday cannot challenge the deed of trust. It is said[6] that theory rests on the doctrines of estoppel and unjust enrichment. In other words the view is taken that it would be inequitable to permit the execution purchaser to buy land at a forced sale for a price depressed by the existence of an apparent prior encumbrance thereon, and then to assail that encumbrance and obtain a better or a clear title without having paid for it on that basis.

Such a rule might apply if the land were sold *expressly* subject to the outstanding encumbrance, and should apply if by statute or court

---

[6] 21 Am. Jur., p. 154, Sec. 302; Annotations; 75 A. L. R., p. 1370, 171 A. L. R. p. 302. See also 23 C. J., pp. 767-771, Secs. 816-821; 33 C. J. S., pp. 577, 580, Sec. 291.

order the full title is sold **[630]** and the amount of the encumbrance paid out of the purchase price. But otherwise it would seem to be to the advantage of both the execution creditor and debtor for the land to be sold for the most it will bring on competitive bidding at public sale. In this state the maxim caveat emptor always has applied to execution sales.[7] And while the purchaser buys at his own risk and acquires only such title in the property sold as the judgment debtor had at the time, yet it has never been held that if it could be proven later the debtor actually had a better title than that shown by the record, the execution purchaser could not claim the benefit of it.

On the contrary, and by way of illustration, it has been frequently held that where a judgment debtor has conveyed his land to another in fraud of creditors, a judgment creditor may have an execution levied on the land standing in the name of the fraudulent grantee, as the property of the fraudulent grantor, bid it in at the sale, and thereafter on the basis of the title thus acquired he can sue the grantee to have the fraudulent conveyance cancelled. Castorina v. Herrmann, supra, 340 Mo., l. c. 1031(4), 104 SW. (2d) 297, 299(5). In other words the *real* equities, not the paper equities, existent at the time of the sale are controlling.

In the instant case the respondent Fairfax was the owner of the fee title to the land involved subject to the deed of trust and secured notes which she executed to respondent Austin without consideration to secure his indebtedness to the bank. While matters thus stood she became further involved by signing Austin's appeal bond in litigation with still another of his creditors. That third party creditor recovered judgment against both of them and had the land sold in execution, appellant Munday being the purchaser and thereby acquiring *all right, title and interest* which respondent Fairfax had in the land, subject to the bank's deed of trust as a holder for value. Our execution statutes so provide. Sec. 1336 authorizes such sales of "all real estate whereof the defendant, or any person for his use, was seized, in law or equity." And Sec. 1338 provides "The term 'real estate,' as used in this article, shall be construed to include all estate and interest in lands, tenements and hereditaments."

The equity of redemption in the land belonged to the respondent Fairfax, subject to the deed of trust held by the bank, and was salable under execution, Holloway v. Holloway, 103 Mo. 274, 283(5), 15 SW. 536, 538. It was a *present* contingent interest dependent on what the bank did by way of foreclosing the deed of trust. The situation was the same as in the sale of a contingent remainder in land under execution, which can be done. And where such a sale is made if the contingency later happens the title vests in fee in the execu-

---

[7]Troost Ave. Cem. Co. v. Kansas City, 348 Mo. 561, 579(5), 154 SW. (2d) 90, 101(12); Hensley v. Baker, 10 Mo. 157, 158(1).

tion purchaser, Bock v. Whelan (Mo., Div. 1) 30 SW. (2d) 607, 608. Similarly it is held that a *quitclaim* deed will pass a contingent remainder, and will vest the ultimate estate in the grantees if the contingency eventuates. Grimes v. Rush, 355 Mo. 573, 197 SW. (2d) 310, citing the Bock case and others. The situation was not like one where it is sought to pass by quitclaim deed an *after acquired* title —one derived from an independent source. There a warranty deed is required. Sec's 3408, 3497.

Thereafter, and after maturity of the notes secured, the bank started to foreclose the deed of trust, but Austin paid it $2000 on his large indebtedness and reclaimed the notes and deed of trust. But he was not, and never had been, the owner of the paper for value. Respondent Fairfax owed him nothing. He had paid her nothing. So far as the notes and deed of trust were concerned, he had satisfied the bank as to the indebtedness they were intended to secure, and discharged the conditions upon which respondent Fairfax had issued them. He did not attempt to repledge them to his other creditors but endeavored to carry on the foreclosure against appellant Munday. Neither of the two respondents could assert the notes and [631] deed of trust as a lien on the land against the appellant Munday. Both were her execution debtors, and respondent Austin had forfeited whatever rights he had as an accommodation party. With the deed of trust thus wiped out as an effective instrument, the title appellant Munday had acquired as execution purchaser carried with it all interest in the land, including any title of a reversionary nature not vested elsewhere. Huffman v. Nixon, 152 Mo. 303, 315 et seq. (3, 5), 53 SW. 1078, 1080-1 (2, 3), 75 A. S. R. 454.

The decretal order of the trial chancellor dismissing appellant's bill in equity is reversed, and the cause remanded with directions to enter a decree for appellant enjoining the foreclosure of the deed of trust recorded in book 5920, page 441, Recorder's Office, City of St. Louis, and cancelling the notes secured thereby.

*Tipton, Conkling* and *Clark, J. J.,* and *Leedy, C. J.,* concur; *Hyde, J.,* concurs in result, *Douglas, J.,* dissents.

## On Motion for Rehearing.

PER CURIAM:—Respondents' motion for rehearing raises the point that under Sec. 112, Civil Code [Laws Mo. 1943, p. 387, Mo. R. S. A. Sec. 847.112] they did not waive their right to introduce evidence by "moving for a directed verdict" at the close of appellant's evidence. That section apparently refers to law cases tried to a jury, whereas this was an injunction suit in equity. But Sec. 100 of the Code [Laws Mo. 1943, p. 385, Mo. R. S. A. Sec. 847.100] would be applicable if the facts warranted. It provides: "After the plaintiff has completed the presentation of his evidence, the defendant,

without waiving his right to offer evidence in the event the motion is not granted, or in the event that the motion is granted and the resulting judgment is later held erroneous, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.''

But respondents did not move for a dismissal or directed verdict. The record shows that at the end of appellant's case, respondents' counsel moved to strike all the appellant's evidence from the record on the ground that the petition failed to show a cause of action, as stated in his opening objection to the introduction of any evidence at the beginning of the trial. He also stated one or two legal reasons why the evidence was insufficient. The court said it would take the case subject to the objection, and inquired, ''Is there anything further?'' Appellant's counsel said ''That is our case.'' The Court said, ''If that is all, gentlemen, I will take it as submitted.'' Respondents' counsel acquiesced by silence and made no claim of any right or intention to introduce evidence in the event his motion to strike was overruled. In our opinion this motion was not the legal equivalent of a ''motion to dismiss'' within Sec. 100 of the Code.

The motion for rehearing or to modify is overruled.