MARGARET JANE BITZENBURG, Respondent, v. ARTHUR BITZENBURG, HAZEL STRAYHALL, and CHARLES M. BITZENBURG, Appellants, No. 41483—226 S. W. (2d) 1017.

Division One, February 13, 1950.

*Guy Whiteman* and *Eugene A. Farris* for appellants.

72

*Wade W. Maupin* and *John Franken* for respondent.

ASCHEMEYER, C.—This is a suit in equity to set aside a note secured by a deed of trust upon real estate in Carrollton, Missouri. Plaintiff (respondent) is the estranged wife of Arthur Bitzenburg who, with his sister Hazel Strayhall, and his father Charles Bitzenburg, were joined as defendants. Respondent and her husband signed the note and deed of trust. Hazel Strayhall is the payee of the note, and the father was joined as an alleged transferee and holder of the note and deed of trust. The petition alleged the note and deed of trust to be fraudulent and void because respondent's signatures thereto were obtained through the false representations of her husband, acting collusively with his sister and father, and because the note and deed of trust were wholly without consideration.

After change of venue from Carroll County, the suit was tried before the Circuit Court of Platte County which entered a decree finding that the note and deed of trust were fraudulent and without consideration and, therefore, void and that they "be cancelled and for naught held." Only the defendant Hazel Strayhall filed a motion for a new trial although Arthur and Charles Bitzenburg joined with her in the notice of appeal.

This case involves the essential validity of the deed of trust which is in dispute. Accordingly, title to real estate is involved

and this Court has appellate jurisdiction. Art. V, Sec. 3, Constitution of Missouri, 1945, Mo. R. S. A.; Cobble v. Garrison, 219 S. W. (2d) 393, (Mo. Sup.); Munday v. Austin, 358 Mo. 959, 218 S. W. (2d) 624.

█ In an equity suit, the Appellate Court must determine the case de novo. It must weigh the evidence and come to its own conclusion upon the facts, but in doing so it will defer to the findings of the chancellor upon conflicting oral testimony since the chancellor has the better opportunity to judge the credibility of· the witnesses and the weight to be given to their testimony. Cobble v. Garrison, supra; Zumwalt v. Forbis, 349 Mo. 752, 163 S. W. (2d) 574; and Hamilton v. Steininger, 350 Mo. 698, 168 S. W. (2d) 59.

The case is presented upon the following evidence:

█ The property covered by the deed of trust consists of a small house which was occupied by Arthur Bitzenburg and three successive wives from 1937 until sometime in 1946 when respondent and her husband'separated. The husband originally acquired the property from his father, Charles Bitzenburg, by a conveyance dated May 17, 1937, which recited a consideration of $750.00. Sometime prior to October 21, 1939, Arthur Bitzenburg was divorced. On this date he married a·second time. Two days before this marriage, he conveyed the property by warranty deed to his sister, Hazel Strayhall. This deed recited a consideration of $1.00 and no revenue stamps were attached. It was not recorded until January 5, 1943. Hazel Strayhall and her husband, by a deed dated June 14, 1944, reconveyed the property to Arthur Bitzenburg. The recited consideration was $1.00 and there were no revenue stamps affixed. This deed was not recorded until March 8, 1946.

The deed of trust in issue is also dated June 14, 1944. It was signed by respondent and her husband, but the evidence shows conclusively that respondent did not sign it, or the note, until June 29, 1944. It secures a note·for $5,000.00 payable to Hazel Strayhall three years after date with interest from date at the rate of 6%. It was recorded on February 21, 1946. In July, 1948, during the pendency of this suit, the deed of trust was foreclosed by Hazel Strayhall who bought in the property for $2,000.00 and received a Sheriff's deed dated July 17, 1948.

Respondent and Arthur Bitzenburg were married on July 3, 1943. Respondent is his third wife. Two children were born of the marriage. During most of the marriage they lived on the property described in the deed of trust which her husband owned. No rent was paid to anyone. Her husband maintained the property, paid for repairs, and paid the taxes. After respondent and her husband separated, she continued to live in the house.

Several times after they were married, her husband told her that the house was his, but he had had it transferred into his sister's name before his other marriage and intended to have it transferred back into their joint names. He told respondent there would be some papers for her to sign to accomplish this result. On June 29, 1944, three days after the birth of their first child, Mr. Brand, a notary public, came to the home with some papers for her to sign. She was in bed. Her mother and her husband were in the room. Her husband told her "that he had brought the papers for me to sign." The notary public asked: "Do you know what you are signing?" Respondent replied: "Yes, I think so; Doc (her husband) has explained it to me."

Respondent did not know anything about legal papers, and her husband had told her he was transferring the title back from his sister's name into their joint names. When she signed the papers, that is what she thought she was signing. She relied on her husband's prior statements because he had told her repeatedly that the title would be transferred into their joint names. Sometime after she signed the papers, she and her husband began to have domestic difficulties, particularly after the second child was born on May 27, 1945. They separated and a divorce suit was filed against her husband in January, 1946. She then learned that the title to the property was not in their joint names and that a deed of trust to Hazel Strayhall was outstanding against the property.

At the time the papers were signed, no money was passed between her husband and his sister, to her knowledge. During their marriage no money was ever loaned to respondent or her husband by Hazel Strayhall. Her husband told her that the house which had been on the property during his first marriage had burned. The insurance was paid to her husband who later applied it on a new house and furniture. The house contained four rooms. It was without modern facilities and located on the edge of town on a one-way street.

On cross-examination, respondent stated that when the notary brought the papers to sign she did not read them because she was sick in bed and her husband told her what they were. The notary did not explain them, and she trusted her husband. Two divorce suits were filed. The first was dismissed and the second is still pending. Respondent is a high school graduate and had worked in a drug store prior to her marriage.

Cross-examination also developed this testimony: "Q. Did Arthur tell you that title of this place was in his sister, and she was going to make a deed to him? A. The title was in his name, and it had been transferred to hers, and he was transferring it back to mine and his. Q. He told you at that time the record title was in her—that he would make her a deed to it. Didn't you testify a minute ago that

he said he would make a deed to the place? A. What he told me was that she was holding title to the house for him—that he transferred it when he was previously married and wanted to transfer it back to mine and his. Q. That is right. He had told you he had transferred title to his sister several years ago, and she was going to transfer it back to him and you? A. Yes, sir.''

The notary public corroborated respondent's testimony that she was in bed with a new born child when the papers were signed; that she did not read them and he did not tell her what they were; that when she started to sign he asked if she knew what she was signing and respondent replied: ''Yes, I think I do. I think Doc (her husband) explained them to me.'' In June, 1944, the reasonable market value of the property was $3,000.00 to $3,500.00.

On October 1, 1946, respondent obtained a decree for alimony pendente lite in the amount of $18.00 per week and an allowance of $150.00 for her attorneys. It was conceded at the time of trial that $1476.00 was due respondent from Arthur Bitzenburg under this judgment.

Arthur Bitzenburg was not present at the trial. Charles Bitzenburg, his father, and Hazel Strayhall, his sister, testified for appellants. The father stated: When he was a boy, Arthur suffered an injury to his right hand which left it stiff. He also had fractured his nose and had a ruptured appendix. He was not strong and his sister often helped him out. He admitted, however, that Arthur had worked for a pipe line company for seven or eight years, had held other jobs, and sometimes made good money. He sold the property to Arthur in 1937 for $750.00. He was not certain whether Arthur or Hazel Strayhall paid him the money but thought Hazel advanced the money to Arthur. The first house burned and was a complete loss. He could not remember whether the insurance was paid to him or to Arthur. A new four room house was built. He and another man did the work, and Hazel paid for the labor and materials. He thought she always paid in cash although she had a checking account. He did not know how much the house cost.

The testimony of Hazel Strayhall was as follows: She is ten years older than her brother Arthur. She had worked most of her life and currently was working in a restaurant making approximately $18.00 a week. When Arthur was a boy, he had injured one hand, had a broken nose and a ruptured appendix. Her father sold the property to Arthur in 1937. At that time, it consisted of an old three room house. Her brother and his first wife lived in it. She *gave* the money to her brother to pay for the house. After this house burned, she wanted to get him a home and let him live in it, provided he kept it up. Her father and another man built the new house. She paid for all the materials and labor in cash. Although she had a checking

account, she did not believe in writing checks. She did not know how much the house cost although she knew at the time. When her brother gave her a deed to the house in 1939, just before he married a second time, it was to protect her because she had put money into it.

Arthur and his second wife lived in the house, and he paid the taxes, repairs, and insurance. She was trying to give her brother a home. In 1944 she deeded the property to Arthur, and he gave her back a deed of trust in accordance with an agreement they had. It was part of one transaction. She expected Arthur to pay for the house if he ever got a job. The lot belonged to Arthur, but she thought he would give her the lot if he did not pay for the house. She had given things to Arthur all his life. He had never repaid her but "I never gave up that. He is not old, and I felt like he might." She had never kept an account of advancements made to him. At the time she deeded the property to Arthur in 1944 he was going on a job and felt he could make a payment. She said, "Well, if you can, all right." She could not explain why she did not retain the title in her name.

She had no idea how much she spent for labor and materials on the house although she kept an accurate record at the time the house was built. In this connection she said: "Q. How much money did you give your father? A. I don't know now. Kept an accurate account at the time, but don't know any more. Q. Well, how much was it? A. I don't remember. Q. Have you got any idea at all how much it was? A. No, I don't just remember."

And again she testified: "Q. Do you know how you reached the figure $5,000.00? A. No. Q. You didn't consider the $5,000.00 as the purchase price of the property, Mrs. Strayhall? A. No. Q. That wasn't the purchase price for the deed you gave him? A. No, not that entirely. Q. The house didn't cost any $5,000.00? A. No—no. Q. The house isn't worth $5,000.00 now? A. No."

On interrogation by the chancellor regarding the cost of building the house she said: "Q. You don't know how much it cost? A. Did at the time—kept it exact. Q. Where did you keep it exact? A. At the time, just on a little piece of paper. Q. On just a little piece of paper? A. Of scrap paper. Q. And you have lost the scrap? A. Didn't want it. Q. Do you remember about what it cost? A. Couldn't say."

We come now to appellants' contentions. They are: (1) Respondent's right to relief is dependent entirely upon the alleged false representations of her husband. Having negligently failed to read the papers, she could not rely on her husband's statements concerning them and, in any event, Hazel Strayhall was not bound by her brother's representations. (2) The deed of October 19,

1939, from Arthur Bitzenburg to Hazel Strayhall, and the circumstances surrounding its execution and delivery, were incompetent evidence. The conveyance could not have been in fraud of any of respondent's rights, since she did not marry Arthur until July 3, 1943. (3) The evidence showed that the deed of trust was a purchase money mortgage and the joinder of respondent therein was not essential to its validity. (4) In any event, even if the note and deed of trust be cancelled, appellant, Hazel Strayhall, is entitled to a lien on the property to the extent of its value.

The cases appellants cite to support their contention that respondent had no right to rely upon her husband's representations and was bound to read the instruments before she signed, involved parties who were dealing at arm's length. They have no application here. It is well settled that a fiduciary relationship exists between husband and wife. 25 C. J. 1119; 36 C. J. S. 744. Such a relationship involves the highest trust and confidence and justified the reliance respondent placed upon the statements of her husband concerning the nature and purpose of the papers she signed in his presence. Allaben v. Shelbourne, 357 Mo. 1205, 212 S. W. (2d) 719, 723; Morris v. Hanssen, 336 Mo. 169, 78 S. W. (2d) 87, 94; Liddell v. Lee, 159 S. W. (2d) 769 (Mo. Sup.).

We recognize that the representations of Arthur Bitzenburg to respondent, however false and fraudulent, are not binding **[1022]** upon appellant, Hazel Strayhall, and will not justify a decree of cancellation unless the evidence shows clearly that Arthur and his sister were acting in concert to procure respondent's signature to a fraudulent deed of trust. This is alleged in the petition, but the petition also alleges quite clearly that the deed of trust was without consideration, and the case was also tried upon this theory. In view of our conclusion that the deed of trust is void for want of consideration, it is not necessary for us to discuss or decide the issue that Arthur Bitzenburg and Hazel Strayhall acted in collusion to obtain respondent's signatures to the instruments through false and fraudulent representations.

Appellants' complaint concerning the introduction in evidence of the warranty deed of October 19, 1939, from Arthur Bitzenburg to his sister, and the circumstances surrounding this transfer, is without merit. Respondent's theory of the case was that Arthur Bitzenburg, having bought the property from his father in 1937, conveyed it to his sister in October, 1939, without consideration, in view of an impending second marriage. Thereafter he continued to live in the property with his second wife and paid the taxes, insurance, and maintenance. This evidence was competent and persuasive to show that the transfer of title in October, 1939, to his sister was illusory and that it was not intended to divest him of

actual ownership of the property. Newman v. Dore, 275 N. Y. 371, 9 N. E. (2d) 966, 969. It was relevant to the issue of want of consideration for the note and deed of trust. If the transfer of title in 1939 was illusory and was not intended to effect the actual and beneficial ownership of the property in Arthur Bitzenburg, the reconveyance of legal title to him in 1944 did nothing more than remove an illusion of ownership in his sister, and furnished no supporting consideration for the note and deed of trust to Hazel Strayhall.

The contention that the deed of trust was a purchase money mortgage is conclusively answered by the testimony of Hazel Strayhall which we have quoted. She stated that $5,000.00, the amount of the note and deed of trust, was not the purchase price of the property, that the house was not worth this amount, and that she had no "figures to go by" in inserting this amount in the note and deed of trust.

A deed of trust is not valid unless it is founded upon a sufficient consideration. The existence of an obligation is an essential element of a valid deed of trust or mortgage. Munday v. Austin, 358 Mo. 959, 218 S. W. (2d) 624 (en Banc); Cobble v. Garrison, 219 S. W. (2d) 393, 394 (Mo. Sup.) and authorities cited therein. A note secured by a deed of trust prima facie imports a consideration, and respondent, in her attack upon the validity of the deed of trust, had the burden of establishing that it was not supported by a sufficient consideration. Munday v. Austin, supra; Cobble v. Garrison, supra. She was entitled to a decree cancelling the note and deed of trust upon evidence clearly preponderating in her favor upon this issue. Von Schleinitz v. North Hotel Company, 323 Mo. 1110, 23 S. W. (2d) 64; Hamilton v. Steininger, 350 Mo. 698, 168 S. W. (2d) 59.

The chancellor found in his decree that the note and deed of trust "are fraudulent and without consideration." After a careful review of all of the evidence and having in mind the chancellor's opportunity to judge the credibility of the witnesses and the weight to be given their testimony, we are of the opinion that his finding that the note and deed of trust are without consideration is supported by a clear preponderance of the evidence.

Respondent is entitled to the benefit of the testimony introduced by appellants. The evidence shows clearly that Arthur Bitzenburg bought the property from his father in 1937, and even if the purchase price was advanced to him by his sister, as she claims, it was intended and regarded by her as a gift. The testimony of Hazel Strayhall concerning advancements to her brother is vague and indefinite. She did not attempt even to approximate the amount she claims to have spent upon the construction of a house to re-

place the one which was destroyed by fire. It is undisputed ▮▮▮ that Arthur Bitzenburg never paid any rent to his sister and that he consistently paid for the repairs, taxes, and insurance upon the property. If Hazel Strayhall ever kept any records concerning the claimed expenditures upon the house, she deliberately destroyed them. She said that she had kept a record "on a little piece of paper" and when the chancellor inquired whether she had lost the "scrap", she stated that she "didn't want it." This testimony alone is inconsistent with any view that Arthur Bitzenburg was indebted to her for the cost of constructing the house. It refutes her own claim that Arthur was obligated to repay such advancements if, in fact, they were ever made by her.

In Wrigley v. Wrigley, 345 Mo. 207, 132 S. W. (2d) 989 this Court, in affirming a decree cancelling a conveyance made by a husband in fraud of the rights of his wife, said, 1. c. 991:

"* * * The fact that no memorandum was made, no note was given at the time funds were advanced, no accounts kept, and no demand for payment ever made, indicates to us that all advances were intended as gifts. * * * We are not bound by mere assertions that the son was indebted to the father. We must determine the facts from a consideration of all the evidence."

The chancellor found that if Hazel Strayhall made any advancements to her brother, they were intended to be and constituted gifts and did not create any legal obligation to repay. We believe that this finding is supported by a clear preponderance of the evidence.

▮▮ The respondent is entitled to a decree cancelling the note and deed of trust. The existence of a void deed of trust, of record, is in derogation of her rights as a judgment creditor of her husband and a fraud upon her right to the support of herself and her minor children. The obligations of Arthur Bitzenburg to support respondent and the children born of their marriage were matured obligations at the time respondent instituted her suit. The obligation of a husband to support his wife becomes complete at the time of their marriage, and the obligation of a father to support his child is complete when the child is born. Pickel v. Pickel, 243 Mo. 641, 662, 147 S. W. 1059.

The decree cancelling the note and deed of trust is affirmed. The record shows that during the pendency of the action in the trial court appellant, Hazel Strayhall, as the holder and owner of the purported deed of trust, caused the same to be foreclosed and bought in the property at such foreclosure sale. The Sheriff of Carroll County, acting as trustee under said deed of trust, executed and delivered to appellant, Hazel Strayhall, on July 17, 1948, a deed to the premises described in the deed of trust. The Sheriff's deed

was recorded in the office of the Recorder of Carroll County in Book 333 at page 86. The decree makes no mention of the Sheriff's deed. Accordingly, this cause is remanded to the Circuit Court of Platte County, Missouri, with directions to modify said decree by cancelling and setting aside said Sheriff's deed. *Van. Osdol* and *Lozier, CC.,* concur.

PER CURIAM:—The foregoing opinion by ASCHEMEYER, C., is adopted as the opinion of the court. All the judges concur.