**GENERAL FINANCIAL SERVICES, INC., Appellant,**

v.

**PRACTICE PLACE, INC., Plaintiff; and Meacham 820 Joint Venture, Intervenor, Appellees.**

No. 2–94–259–CV.

Court of Appeals of Texas, Fort Worth.

April 13, 1995.

John A. Fietz, Dallas, for appellant.

Hill, Gilstrap, Moorhead, White, Bodoin & Webster, and Frank Gilstrap and Larry L. Fowler, Jr. Arlington, for appellees.

Before CAYCE, C.J., LIVINGSTON, J., and PATRICE M. BARRON, J. (Former Justice) (Sitting by Assignment).

## OPINION ON REHEARING

CAYCE, Chief Justice.

The appellees' motion for rehearing is granted. Our prior opinion and judgment of March 7, 1995, are withdrawn and the following opinion is substituted therefor.

This is an interlocutory appeal of an order granting a temporary injunction. General Financial Services, Inc. ("GFS") owns a promissory note secured by a deed of trust against a 23.591–acre tract of land. Meacham 820 Joint Venture ("Meacham") owns the land and Practice Place, Inc. ("Practice Place") leases the land from Meacham. After GFS posted the land for foreclosure, Meacham and Practice Place obtained a temporary injunction in the 352nd District Court, Tarrant County, Texas, to stop the foreclosure. GFS appeals from the order granting the temporary injunction. We affirm.

### Background Facts

On January 9, 1985, M.A. Blubaugh, trustee, gave a $730,000 promissory note to MBank, Fort Worth. The Blubaugh note was payable in quarterly installments, with a balloon payment due on July 9, 1986, and was secured by a deed of trust against a 23.591–acre tract of land located on Loop 820 in north Fort Worth. Over the next two years, the note was renewed and extended three times. The third extension matured on January 9, 1989.[1]

In March 1989, the FDIC was appointed receiver of the assets of MBank, Fort Worth and simultaneously transferred the Blubaugh note to Deposit Insurance Bridge Bank N.A., Dallas, Texas ("DIBB").[2] DIBB subsequently became Bank One Texas, N.A. ("Bank One"). Thereafter, on July 14, 1993, Bank One entered into a "Loan Sale Agreement" to sell the note to GFS along with other loans. The FDIC was a third-party beneficiary to the agreement.

At some point, Meacham became the owner of the 23.591–acre tract. Meacham then leased the land to Practice Place, which is now operating a golf driving range on the land.

On June 13, 1994, GFS gave written notice of its intent to foreclose on the property on July 5. Six days prior to the scheduled foreclosure, Practice Place filed suit seeking temporary injunctive relief and a declaration that GFS's right to foreclose under the deed of trust is unenforceable, because the Blubaugh note is conclusively presumed paid pursuant to provisions of Texas Civil Practices and Remedies Code section 16.035, which provide a four-year limitations period for debt actions. Meacham later intervened seeking the same relief.

After the evidentiary hearing on Meacham and Practice Place's requests for temporary injunctive relief, the trial court granted the applications for temporary injunction by entry of an order containing the following findings:

> Came on to be heard the Petition for Temporary Injunction requested by Practice Place, Inc., Plaintiff, and Meacham 820—Joint Venture, Intervenor, due notice having been given. Plaintiff and Intervenor appeared in person, and by and through their attorney of record, and Defendant appeared by and through its attorney of record. The Court, having considered the pleadings, evidence and argument of counsel, finds that Plaintiff and Intervenor will probably prevail on the trial of this cause; that Intervenor is the owner of certain real property located in Tarrant County, Texas, more particularly described on Exhibit "A" attached hereto (the "Property"); that Defendant is claiming a deed of trust lien on such Property and intends to foreclose its lien on such Property by

---

1. Meacham and Practice Place allege a fourth extension was granted by the Deposit Insurance Bridge Bank "dated effective January 9, 1989." However, the alleged agreement is not in evidence and both parties agree that January 9, 1989 is the date of maturity of the note.

2. The FDIC is authorized to create "bridge banks" to maintain the functions of a failed bank and facilitate the return of assets owned by the failed bank to the private sector. See 12 U.S.C.A. § 1821(n) (West 1989).

conducting a trustee's sale for such Property as soon as possible and before the Court can render judgment in this cause; that Defendant is claiming that it is entitled to enforce its deed of trust lien on such Property by virtue of default on the payment of a promissory note executed by M.A. Blubaugh Trustee, dated July 9, 1985, originally payable to Mbank Fort Worth, N.A., which note matured on January 9, 1989; that the subject promissory note matured more than four years prior to the date hereof; *therefore, such note is conclusively presumed to have been paid as of January 9, 1993, pursuant to Texas Civil Practices & Remedies Code § 16.035;* that if Defendant carries through with its intention to foreclose its security interest in the Property, that Defendant will alter the status quo and tend to make ineffectual a judgment in favor of Plaintiff and Intervenor; and that Intervenor and Plaintiff will be without any adequate remedy at law and will be irreparably harmed if Defendant is allowed to conduct its trustee's sale, since Intervenor will lose the ownership of the subject Property, and will also lose the rental incomes which are being generated by the operation of a business by Plaintiff on such Property; and, the loss and harm which would be caused to Plaintiff and Intervenor if the foreclosure were allowed to go forward is irreparable and incapable of precise calculation. [Emphasis supplied.]

### Standard Of Review

Because an appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order, the merits of the movant's case are not presented for appellate review. *Car Wash Sys. v. Brigance,* 856 S.W.2d 853, 857 (Tex.App.—Fort Worth 1993, no writ); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.,* 819 S.W.2d 607, 610 (Tex.App.—Houston [1st Dist.] 1991, no writ). Our review is strictly limited to whether the trial court clearly abused its discretion. *Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981). An abuse of discretion occurs only when the evidence upon which the injunction is granted fails to furnish any reasonable basis for concluding that the applicant has a probable defense or right to recover. *Camp v. Shannon,* 162 Tex. 515, 518, 348 S.W.2d 517, 519 (1961); *Murphy v. Tribune Oil Corp.,* 656 S.W.2d 587, 589 (Tex.App.—Fort Worth 1983, writ dism'd). An abuse of discretion may also occur when the trial court misapplies the law to established facts. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Car Wash Sys.,* 856 S.W.2d at 857.

### Holding

Applying the above standard of review to the undisputed facts of this case, we hold that the trial court did not abuse its discretion in temporarily enjoining GFS's foreclosure on the basis that the lien debt may be subject to the four-year statute of limitations contained in section 16.035 of the Texas Civil Practices & Remedies Code.[3] Under the rationale of the Supreme Court of Texas in *Jackson v. Thweatt,* 883 S.W.2d 171 (Tex.), *cert. denied sub nom. Weatherly v. Federal Debt Mgt., Inc.,* —— U.S. ——, 115 S.Ct. 196, 130 L.Ed.2d 127 (1994), and *Cadle Co. v. Estate of Weaver,* 883 S.W.2d 179 (Tex.1994) (per curiam), it was reasonable for the trial court to conclude that GFS was not entitled to the six-year statute of limitations provided by 12 U.S.C.A. § 1821(d)(14) (West 1989) because that right was expressly retained by

---

**3.** Section 16.035 provides as follows:

   (b) A sale of real property under a power of sale in a mortgage or deed of trust that secures a lien debt must be made not later than four years after the day the cause of action accrues.

   . . . .

   (d) On the expiration of the four-year limitations period, *it is conclusively presumed that a lien debt has been paid and the lien debt and a power of sale to enforce the lien become void at that time.*

   . . . .

   (f) In this section, "lien debt" means:

   . . . .

   (2) a vendor's lien, a mortgage, a *deed of trust,* a voluntary mechanic's lien, or a voluntary materialman's lien on real estate, securing a note or other written obligation.

Tex.Civ.Prac. & Rem.Code Ann. § 16.035 (Vernon 1986) (emphasis supplied).

Bank One in the loan sale agreement with GFS.

### Jackson v. Thweatt

*Jackson* involved two consolidated cases in which purchasers of notes from the FDIC and a transferee of the FDIC filed suit to collect on the notes more than four years after the notes matured or defaulted. The issue presented in the consolidated cases was whether purchasers of such notes from the FDIC, or successors of the FDIC's successors in interest, obtained the benefit of the federal limitations period of 12 U.S.C.A. § 1821(d)(14),[4] which gives the FDIC six years to bring suit on delinquent notes acquired from a failed bank. This limitations provision was enacted in 1989 as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").[5]

In an opinion written by Chief Justice Phillips in which all sitting justices joined,[6] the Supreme Court of Texas held that section 1821(d)(14) applies to actions brought by purchasers of assets from the FDIC and its successors in interest to recover on those purchased assets pursuant to the common-law maxim that "[a]n assignee stands in the shoes of his assignor." *Jackson*, 883 S.W.2d at 174; *see FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir.1993).

In *Cadle*, a companion case, the supreme court, without hearing oral argument, reversed the judgment of the Dallas Court of Appeals granting summary judgment for a borrower on the ground that the FDIC's assignee, the Cadle Company ("Cadle"), did not receive the benefit of the FDIC's special six-year statute of limitations for suing on two notes. The court, however, remanded the case to the court of appeals for consideration of the borrower's argument that, "even if [Cadle] generally receives the benefit of [the FDIC's six-year limitations period], Cadle expressly waived that right … pursuant to a contractual provision in the assignment [from FDIC]." *Cadle*, 883 S.W.2d at 179 n. 2.[7]

### Bank One Is The FDIC's Successor In Interest

■ Meacham and Practice Place first contend that the trial court did not abuse its discretion in temporarily enjoining the foreclosure because there was no evidence that the FDIC ever owned the debt. They assert that, based on the evidence before the trial court, it could have easily concluded that neither DIBB nor Bank One was a successor in interest to the FDIC and, therefore, GFS could not have acquired the six-year limitations period from Bank One. We find, however, that the evidence conclusively establishes that the FDIC *did* own the Blubaugh note prior to its transfer to DIBB and Bank One.

In its sworn petition in intervention, Meacham made the following judicial admissions:

> In March of 1989, the FDIC was appointed receiver of the assets of MBank Fort Worth, N.A., Fort Worth, Texas. Si-

---

**4.** 12 U.S.C.A. § 1821(d)(14) provides as follows:

(A) In general
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
(i) in the case of any contract claim, the longer of—
(I) the 6-year period beginning on the date the claim accrues; or
(II) the period applicable under state law….
(B) Determination of the date on which a claim accrues
For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.
*Id.*

**5.** Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 212(d)(14), 103 Stat. 183, 232–33 (1989).

**6.** Justice Enoch did not sit.

**7.** On remand, the Dallas Court of Appeals held that the state statute of limitations barred Cadle's recovery because Cadle waived its right to the extended limitations period in its agreement with the FDIC. *Cadle Co. v. Estate of Weaver*, 897 S.W.2d 814, 817 (Tex.App.—Dallas 1994, writ denied).

multaneously, on March 29, 1989, the FDIC transferred certain assets, *including the aforereferenced Note,* to the Deposit Insurance Bridge Bank, N.A., Dallas, Texas. The Deposit Insurance Bridge Bank, thereafter became Bank One, Texas, N.A. [Emphasis supplied.]

■ It is a well-settled rule that assertions of fact in the live pleadings of a party are judicial admissions and are binding on the party making them. *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 769 (Tex. 1983); *Beta Supply, Inc. v. G.E.A. Power Cooling Sys., Inc.,* 748 S.W.2d 541, 542 (Tex. App.—Houston [1st Dist.] 1988, writ denied). Admissions are equally binding on co-parties where there is privity or a joint interest between them, they are represented by the same counsel and assert the same rights and defenses. *See Freestone County Title & Abstract Co. v. Johnson,* 594 S.W.2d 817, 818 (Tex.Civ.App.—Dallas 1980, no writ); *accord Munday v. Austin,* 358 Mo. 959, 218 S.W.2d 624, 628–29 (1949). *See generally* 2 STEVEN GOODE, OLIN G. WELLBORN III, & M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 801.13 (Texas Practice 1993).

■ Meacham's verified pleadings conclusively established that the Blubaugh note did, in fact, pass through the hands of the FDIC and DIBB *prior to its acquisition by* GFS from Bank One. Both Meacham and Practice Place are bound by this admission. Practice Place, as Meacham's lessee, is in privity with Meacham, it is acting together with Meacham in the litigation and it is represented by the same counsel as Meacham. Therefore, Meacham's judicial admission conclusively establishes that Bank One was a successor in interest of the FDIC.[8] Since there is no evidence in the record indicating that the FDIC retained its limitation rights when it transferred the Blubaugh note and deed of trust to DIBB, the trial court would have had discretion to enjoin GFS's foreclosure on state limitations grounds only if Bank One did not acquire the extended limi-

tations period from DIBB or sell it to GFS. *See Cadle,* 883 S.W.2d at 179 n. 2; *Jackson,* 883 S.W.2d at 176.

### *There Is No Evidence That DIBB Reserved Or Waived The Benefits Of Section 1821(d)(14)*

■ Meacham and Practice Place contend that neither Bank One nor GFS are entitled to the benefit of section 1821(d)(14), because DIBB allegedly entered into a new extension agreement with Blubaugh that had the effect of extinguishing DIBB's rights under the statute. However, this alleged extension agreement was not introduced in the trial court, and there is no other evidence in the record indicating that DIBB reserved or waived the benefits of section 1821(d)(14) prior to or upon the assumption of the Blubaugh note and deed of trust by Bank One. Consequently, there was no reasonable basis in the evidence or applicable law for the trial court to conclude that the six-year limitations period did not pass from DIBB to Bank One when Bank One assumed the Blubaugh note and deed of trust.

We now turn to the question of whether Bank One transferred to GFS its right to the extended limitations period.

### *Bank One Retained The Benefits Of Section 1821(d)(14)*

■ Meacham and Practice Place contend that the seller of the Blubaugh note and deed of trust, Bank One (f/k/a DIBB), retained the right to sue on the note under the federal six-year statute of limitations in paragraph 31 of the loan sale agreement. Paragraph 31 of the agreement provides, in pertinent part, as follows:

*Retained Rights and Claims.* Notwithstanding anything to the contrary contained in any covenant, term or provision of this Agreement, Seller does not assign, transfer and convey to Purchaser those rights and claims which are hereby reserved and retained for the benefit of (a) the FDIC, either in its corporate capacity

---

8. In oral argument, counsel for Meacham and Practice Place asserted that the trial court had the discretion to ignore Meacham's admissions. We disagree. A trial court has no discretion to disregard conclusive evidence. *See Boucher v. Wissman,* 206 S.W.2d 101, 104 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.).

or as receiver for the Former Banks being more particularly described in subparagraph (i) herein below, and (b) Seller any and all right, title and interest in and to any liens or other rights pertaining to Other Collateral, being more particularly described in subparagraph (ii) hereinbelow (such matters being hereinafter collectively referred to as "Retained Rights"):

. . . .

(ii) *All of Seller's Retained Rights which shall mean: (1) any rights, causes of action or defenses of Seller which are peculiar to it as a transferee of the FDIC under applicable federal statues or rule of law;* and (2) any and all right, title, and interest in and to any liens or other rights pertaining to other collateral ("Other Collateral"), other than the properties specifically securing payment of the Loans, which properties securing the Loans include the property described on Exhibit "B" attached to the Assignment, which Other Collateral may have been heretofore pledged by any of the Debtors to secure payment of other indebtedness ("Other Indebtedness") owed to the Seller and which arise under or pursuant to "cross default", "cross collateralization" or "other indebtedness" provisions contained in any of the Collateral Documents. Purchaser agrees not to enforce or otherwise exercise any rights or remedies available to Purchaser under any "cross default", "cross collateralization" and "other indebtedness" provisions contained in the Collateral Documents to the extent such provisions apply to Other Collateral or Other Indebtedness.

The foregoing provisions shall be binding upon Purchaser and any successors or assignees of Purchaser and shall inure to the benefit of the Seller and the Federal Deposit Insurance Corporation, either in its corporate capacity or as receiver for the Former Banks, as applicable. It is understood and agreed that the Federal Deposit Insurance Corporation is intended to be a third party beneficiary under this paragraph 31 and all such provisions shall expressly survive Closing. [Emphasis supplied.]

Meacham and Practice Place urge that this language may be reasonably interpreted to mean that the parties to the agreement did not intend that Bank One sell and GFS purchase Bank One's right to sue under the federal six-year limitations. GFS contends that Bank One only intended to retain this right as it pertains to "other collateral" securing "other indebtedness" owned by Bank One.

▮▮▮ A cardinal rule of contract construction is that courts are required to construe contracts in a manner that would give effect to the parties' intentions as revealed by the language used in the contract. *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 330 (Tex.1984); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). The language of a contract should be given its plain, ordinary, and commonly accepted meaning. *E.g., Reilly v. Rangers Mgt., Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Jim Walter Homes, Inc.,* 668 S.W.2d at 330. Courts are required to follow elemental rules of grammar for a reasonable application of the legal rules of construction. *Zephyr Oil Co. v. Cunningham,* 265 S.W.2d 169, 173 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.).

▮▮ Generally, an assignment carries with it all rights, remedies, and benefits that are incidental to the thing assigned. 6A C.J.S. *Assignments* § 76 (1975); *see Jackson,* 883 S.W.2d at 176. However, "[t]he operation and effect of an assignment may be limited by exceptions, reservations, conditions, or restrictions contained therein." 6A C.J.S. *Assignments* § 78 (1975); *see Jackson,* 883 S.W.2d at 176.

Applying these rules to the "Seller's Retained Rights" clause in paragraph 31 of the Loan Sale Agreement, we hold that the trial court could have reasonably interpreted the clause as expressing an intent that Bank One retain its right to the extended limitation period with respect to the Blubaugh note and deed of trust, rather than merely the other collateral and indebtedness of Bank One. The clause unmistakably indicates that, for whatever reason, Bank One did not intend to sell and GFS did not intend to purchase "any rights, causes of action or defenses" which

are "peculiar to it as a transferee of the FDIC under applicable federal statutes or rule of law." It is certainly reasonable to conclude that the federal six-year limitation period is a "right" which is "peculiar" to Bank One as a successor in interest of the FDIC. *See Jackson,* 883 S.W.2d at 174. Based on the record before the trial court at the time of the temporary injunction hearing, we believe it was within the trial court's discretion to temporarily enjoin GFS's foreclosure proceedings on the theory the "Seller's Retained Rights" clause includes the six-year statute of limitations pertaining to the Blubaugh note and deed of trust. *Cf. Cadle,* 883 S.W.2d at 179 n. 2 (recognizing possibility that seller may have reserved extended limitations period in loan sale agreement).

Therefore, to the extent that the trial court issued the injunction on the basis that Bank One may have retained in the loan sale agreement its rights under section 1821(d)(14), as they pertain to the note and deed of trust sold to GFS, we hold that the trial court did not abuse its discretion because this interpretation of the agreement provides a reasonable basis for concluding that Meacham and Practice Place have a probable limitations defense to GFS's collection efforts under the state limitations statute.

For the reasons stated above, we affirm the order of the court granting Meacham and Practice Place's prayer for injunctive relief and temporary injunction.