# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 14-6008

_____

In re: Stephen D. McCormick, also known as Steve D. McCormick; Karen A. McCormick

*Debtor*s

------------------------------

Starion Financial

*Movant - Appellant*

v.

Stephen D. McCormick; Karen A. McCormick

*Debtors - Appellees*

_____

Appeal from United States Bankruptcy Court
for the District of North Dakota - Fargo

_____

Submitted: October 28, 2014
Filed: December 24, 2014

_____

Before FEDERMAN, Chief Judge, SALADINO and SHODEEN, Bankruptcy Judges.

_____

SHODEEN, Bankruptcy Judge

Starion Financial appeals from the bankruptcy court's order denying its Motion to Compel Payment of Fees Under the Confirmed Plan of Reorganization and granting the Debtors' Motion to Disallow Attorneys' Fees and Costs Claimed by Starion Financial. We have jurisdiction of this appeal from entry of the bankruptcy court's final order pursuant to 28 U.S.C. section 158(b). For the reasons set forth below, we reverse and remand for further proceedings.

BACKGROUND

Over the course of several years the Debtors and Starion entered into a series of loan transactions. Pursuant to the various promissory notes and mortgages dated December 23, 2004, January 25, 2006, June 13, 2007 and June 30, 2009 the Debtors were liable for payment of Starion's attorney fees and costs for collection of the indebtedness. The Debtors also executed personal guarantees, in differing amounts, related to the promissory notes and mortgages given to Starion by entities owned by the Debtors. Defaults under the loans resulted in a Workout Agreement dated July 26, 2012 between Starion and the Debtors. As part of that agreement, the Debtors consented to the entry of judgments against them to secure their personal guarantees. On July 27, 2012, based upon two properly filed confessions of judgment which were executed as part of the Workout Agreement, a North Dakota state court entered judgments against Debtors in the respective amounts of $2,078,034.26 and $1,000,000.00, plus interest.

Debtors filed a voluntary chapter 11 petition on August 29, 2012. Pre-confirmation modifications to the Debtors' Second Amended Plan of Reorganization ("Plan") were accomplished by a series of filed addendums. One such addendum was filed to resolve and define the payment terms for Starion's claim ("Starion Addendum"). Specifically that addendum stated:

> Collection Costs. Debtors agree to pay Starion's allowable attorney's fees and costs associated with both Debtors' bankruptcy proceedings including but not limited to reasonable attorneys' fees, consulting,

appraisal, filing fees, late f ees, etc. (collectively referred to as "Fees") through the Plan. The procedure for allowance of such attorneys' fees and costs will be as provided in the Plan.

On September 13, 2013 t he Debtors' Plan, incorporating the Starion Addendum, was confirmed by the bankruptc y court. Section 8.01(c) of t he confirmed plan defines "Allowable Attorneys' Fees and Costs" as "a cl aim against the debtors for an oversecured creditor's attorney's fees and costs incurred in connection with the creditor's secured clai m." That section goes on to describe the proc edure for allowance of the fees and costs as follows:

> Any Allowable Fees and Costs m ust be approved by Debtors before payment is di sbursed. At least ten days prior to the Effective Date of the Plan, the creditor a nd/or its counsel, shall submit an itemized statement (reflecting date, a description of the se rvices, increments of time spent, and hourly rate being charged), to the Debtors and their counsel, for approval. If the parties cannot come to an agreement or resolution as to the am ount of the Allowable Attorneys' Fees and Costs to be paid, the matter shall be determ ined by the Bankruptcy Court, upon notice and hearing. No paym ent of Allowable Attorneys' Fees and Costs will be due until eithe r the agreement of the parties or a final determ ination by the Bankruptcy Court that those am ounts are due under the Plan.

On October 3, 2013 Starion subm itted an itemized statement to the Debtor for various costs inc luding interest, late fees, real esta te taxes, and appraisal and engineering fees. A few days later on October 7, 2013 Starion submitted an updated statement that included its attorneys' fees. Taking the position that Starion

was not entitled to these amounts based upon the Plan or 11 U.S.C. section 506(b) the Debtors refused to pay the amounts requested for appraisal and engineering costs, and the attorneys' fees (collectively "Fees").

Starion filed a motion requesting the bankruptcy court to compel payment of its Fees in the amount of $125,014.64 based upon the Plan and 11 U.S.C. section 506(b). On the same day the Debtors filed a motion seeking disallowance of the Fee request contending that: there is no agreement for the payment of Fees; the Fee request was untimely; and the Fees are not reasonable.

## BANKRUPTCY COURT DECISION

On March 10, 2014, the bankruptcy court issued its Order denying Starion's motion to compel payment of attorney fees and costs, and granting Debtors' motion seeking disallowance of Starion's request. The court began its analysis by noting the terms of the Starion Addendum and the Plan, and specifically determined that: "both Debtors and Starion agree that the Court's analysis regarding Starion's eligibility to recover attorney fees is confined to limits outlined in section 506 of the Bankruptcy Code."

Since section 506 allows an oversecured creditor to recover reasonable fees and costs provided for under the agreement under which the claim arose, the bankruptcy court first looked at whether Starion's claim was oversecured. The court noted that, "Debtors do not dispute Starion's claim that it is oversecured. In fact, in their briefs, Debtors refer to Starion's claim as oversecured."

4

Notwithstanding, the bankruptcy court did not ultimately decide whether Starion is oversecured, but instead assumed[1] that it was for purposes of its order.

Next, the bankruptcy court looked at whether fees and costs were all owed under an agreement under which the claim arose. It held that: "Starion's judicial liens 'arose' under the Judgments, which when entered by the clerk and recorded under North Dakota law created liens on real property. N.D.C.C. §28-20-13. Consequently, the documents this Court looks to for an agreement giving rise to the claim for attorney fees and costs are the Judgments." Relying upon a North Dakota statute that disfavors payment of attorney fees, the bankruptcy court concluded that the absence of "a clause or sentence [in the judgment] entitling Starion to collect attorney fees" was fatal to Starion's request for payment. Accordingly, Starion's motion to compel payment was denied and the Debtor's motion disallowing the Fees was granted. Starion appeals the bankruptcy court's ruling.

STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. First Nat'l Bank v. Pontow, 111 F.3d 604, 609 (8th Cir. 1997) (quoting Miller v. Farmers Home Admin. (In re Miller), 16 F.3d 240, 242-43 (8th Cir. 1994)). In this case we review de novo the bankruptcy court's interpretation and application of 11 U.S.C. section 506(b). Wegner v. Grunewaldt, 821 F.3d 1317, 1320 (8th Cir. 1987); White v. Coors Distributing, Co. (In re White), 260 B.R. 870, 874 (B.A.P. 8th Cir. 2001).

---

[1] Based upon footnote 9 in the bankruptcy court's order this element is deemed to have been conceded by the parties.

DISCUSSION

Payment of attorney fees and costs to an oversecured creditor is permitted by the Bankruptcy Code at 11 U.S.C. section 506(b), which states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the am ount of such claim, there shall be allowed to the holder of such claim, interest on such clai m, and any reasonable fees, costs, or charges provided for under the agreement or State statute[2] under which such claim arose.

The statute requires a showing of four fa ctors: "(1) the clai m must be an allowed secured claim; (2) the creditor holding th e claim must be over-secured; (3) th e entitlement to fees, costs, or charges m ust be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in am ount." In re Sun 'N Fun Waterpark, LLC, 408 B.R. 361, 366 (B.A.P. 10th Cir. 2009). See also In re White, 260 B.R. 870, 880 (B.A.P . 8th Cir. 2001) (citing First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.), 104 F.3d 200, 201 (8th Cir. 1997)). Upon proving these factors the st atute plainly states that payment of reasonable fees, costs or charges "shall be allowed."

The bankruptcy court's decision was ba sed solely on the third factor. Our review is, therefore, lim ited to the third factor which requires a determination of whether the agreement under which the cl aim arose provide s for the payment of attorney fees and costs.

---

[2] In 2005, the reference to a State statute as a basis for payment of an oversecured creditor's claim for reasonable fees and costs was added to 11 U.S.C. section 506(b) to place consensual and non-consensual liens "on a level playing field" for purposes of applying the statute. In re Gift, 469 B.R. 800, 806 (Bankr. M.D. Tenn. 2012).

Starion argues that the bankruptcy cour t committed error in holding that the state court judgments made Starion oversecu red, and thus t he judgments were the "agreement" under which Starion's claim m ust arise. Instead, Starion contends that the underlying l oan documents, the Workout Agreement, Plan and addendum thereto should be considered collectively to constitute the agreement required by section 506(b).

The bankruptcy court's reliance upon the judgments as the "agreement" under which Starion's right t o payment of it s fees arises is m isplaced. It is undisputed that the promissory notes, mortgages, Workout Agreement and ot her documents related to the loans that constitute Starion's claim *do* contain appropriate attorney fee provisions. Those are the instruments under which Starion's "claim arose." The t erm "claim" is defined in the bankruptcy code as a "right to payment, whether or not such right is reduced to judgm ent, liquidated, unliquidated, fixed, conti ngent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured…" Stari on's right to payment, or claim, arose directly from its loan docum ents—as the definition of claim expressly recognizes that the claim may exist with or wit hout a judgment. A judgm ent is sim ply a means of enforcing a right to payment. Here, the judgments happen to gi ve Starion a lien on real property of the judgm ent debtors in the counties where the judgm ent was entered, which increases the collateral for Starion's claim but does not change the instruments under which the right to claim attorney fees arose.

> [A] lien secures an interest th at already exists. <u>See, e.g.,</u> <u>In re AR Accessories,</u> 345 F. 3d at 458–59 (describing lien as "a mechanism for ... enforcement of a preexisting right"); 51 Am.Jur.2d Liens § 2 (2014) ("A lien is a cause

> of action, a remedy ..., or a method by which to enforce an underlying claim. That is, a lien is pa rt and parcel of the underlying claim, the former existing only because of the latter.")

Branch Banking & Trust Co. v. Constr. S upervision Servs., Inc. (In re Constr. Supervison Servs., Inc.), 753 F.3d 124, 128 (4th Cir. 2014). The fact that the parties utilized confessions of j udgment to obtain the judicial lien is also relevant to the analysis under 11 U.S.C. section 506(b).

> A "judgment by confession" or "confession of judgment" *signifies an acknowledgment of indebtedness*, on which it is contemplated that a judgment may and will be rendered. It is a judgm ent entered pursuant to t he voluntary act or agreement of the defendant, and is substantially an acknowledgment that a debt is justly due.
> ...
> It is in effect a private ad mission to liability for a debt without trial.

49 C.J.S. Judgments § 170 (emphasis added) . The judgm ents entered by the state court in favor of t he Appellant served to acknowledge inde btedness and secure payment of the obligations that existed under the notes, mortgages, guarantees[3] and Workout Agreement.

It appears that the parties' argum ents and t he bankruptcy court's order intermixed the two requirements of the right to fees under 506(b)—that the creditor be oversecured and that the right to fees be provided for under the agreement under which the claim arose. Those are two s eparate requirements. In particular, section 506(b) does *not* require that the right to fees be provided in the agreement under

---

[3] The underlying guarantees were not admitted into evidence. The record reflects that the Debtors did not contest the issue that the guarantees included a provision for the payment of attorney fees.

which the creditor became oversecured. [4]  It also doe s not require that it be in *all* agreements that make up the secured claim of the creditor.

The record reflects that the parties  had a long standing lending relationship that involved numerous real estate lending t ransactions.  It is undisputed that the original  notes, m ortgages  and guaranty documents provide  d  for payment of Starion's Fees.  Th e terms of the Workout  Agreement also referenced Starion's right to clai m its Fees.  The confession  s of judgment and subsequent  judgment liens merely served as the mechanism  to perfect an interest in additional collateral to secure payment of all obligations t  o Starion.  As such, t he judgment entries cannot be construed as the sole agreem  ents for purposes of applyi ng 11 U.S.C. section 506(b), and the bankruptcy court'  s conclusion that the Judgments m ust constitute the agreement under which the A ppellant's Fee claim arose for purposes of applying 11 U.S.C. section 506(b) is erroneous as a matter of law.

## CONCLUSION

For the reasons set forth, the decision of the bankruptcy court is reversed.  The case is  remanded for further proceedings to      determine  the reas onableness  and the timeliness of the Appellant's Fee request.

---

[4] We note that Debtors cite to D.W.G.K. Restaurants, Inc., 84 B.R. 684, 687 (Bankr. S.D. Cal. 1988) which states that the agreement referenced in section 506(b) is a security agreement.  That conclusion is based on the legislative history of section 506(b), which states in part, "if the security agreement between the parties provides for attorneys' fees, it will be enforceable under title 11…."  The D.W.G.K. court and the Debtors seem to believe that as a result of that legislative history, *only* a security agreement can serve as the "agreement" under section 506(b).  We disagree. The legislative history is certainly not limiting in its language and the statute clearly does not create any such limitation.