# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2192
_____

In re: Stephen D. McCormick; Karen A. McCormick

*Debtor*s

------------------------------

Stephen D. McCormick; Karen A. McCormick

*Appellant*s

v.

Starion Financial

*Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: March 14, 2018
Filed: July, 3, 2018

_____

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

_____

BEAM, Circuit Judge.

Debtors, the McCormicks, appeal the ruling of the Eighth Circuit Bankruptcy Appellate Panel (BAP), affirming the bankruptcy court's order that Starion Financial was entitled to $83,122.95 in attorney fees and costs incurred to collect on its secured debt in the course of the McCormicks' bankruptcy proceedings. We affirm.

## I.    BACKGROUND

This is the second appearance before this court by these parties with a bankruptcy-generated attorney fees dispute. In the underlying financial arrangements, the McCormicks and Starion entered into a series of loan transactions between 2004 through 2012. Pursuant to the various promissory notes and mortgages, the McCormicks were liable for payment of Starion's attorney fees and costs engendered in collection of the indebtedness. The McCormicks further executed personal guarantees for these notes. The loans were secured by mortgages totaling over $20 million covering a residential development in Bismarck, North Dakota, known as Misty Waters, as well as a deed of trust for $1.5 million on the McCormicks' condominium in Arizona. All of these notes contained provisions stating that the McCormicks would pay reasonable attorney fees incurred by Starion in the event it was required to take action to collect upon the debt. When the McCormicks defaulted on the loans, Starion and the McCormicks agreed upon a Workout Agreement wherein Starion agreed to forbear on certain defaults that had already occurred, and in return, the McCormicks executed and delivered confessions of judgments in the respective amounts of $2,078,034.26 and $1,000,000 to be filed and entered if they defaulted on the Workout Agreement. Not long after, the McCormicks defaulted on the Workout Agreement; Starion filed the confessions of judgments in North Dakota state court; and judgment liens for $2,078,034.26 and $1,000,000 were entered on July 27, 2012.

Shortly after the North Dakota state court judgment was entered, in August 2012, the McCormicks filed a voluntary Chapter 11 bankruptcy petition. After a

second amended plan of reorganization was filed in August 2013, Starion objected to confirmation, stating in relevant part that the plan did not provide for attorney fees that it was entitled to as an oversecured creditor. As a result of that objection, the McCormicks filed an addendum to the amended plan known as the Starion Addendum in which the McCormicks again agreed to pay Starion's allowable attorney fees and costs associated with the bankruptcy proceedings. Starion was required by the plan to submit an itemized statement of its claim for fees and expenses "[a]t least ten days prior to the Effective Date of the Plan." The bankruptcy plan containing this addendum was confirmed by the bankruptcy court on September 13, 2013, and the effective date of the plan was October 15, 2013. On October 3, Starion submitted an itemized statement to the McCormicks for various costs including interest, late fees, real estate taxes, and appraisal and engineering fees. On October 7, Starion submitted an updated statement that included its attorney fees. The McCormicks took the position that Starion was not entitled to attorney fees based upon the plan or 11 U.S.C. § 506(b),[1] and refused to pay the fees requested. Starion filed a motion requesting the bankruptcy court to compel payment of its fees in the amount of $125,014.64. The McCormicks argued to the bankruptcy court that there was no agreement for the payment of fees; the fee request was untimely; and the fees were not reasonable.

The bankruptcy court issued its order in March 2014, finding that while Starion might well be oversecured (as required for payment of fees by § 506(b)), this status arose from the judgments entered in North Dakota state court, and those judgments

---

[1] 11 U.S.C. § 506(b)(2) states: "To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."

did not mention Starion's right to collect attorney fees.[2]  The court noted that while Starion did have several secured claims in the form of properly perfected real estate mortgages that provided for fees, the value of the real estate covered by those particular mortgages did not exceed the debt owed to Starion.  Because the court concluded that the state judgment liens were not part of any "agreement," Starion could not include these amounts to achieve oversecured status.  Thus, it denied Starion's request for fees.

Starion appealed to the BAP, which reversed. In re McCormick (McCormick I), 523 B.R. 151 (8th Cir. BAP 2014).  The BAP held that the bankruptcy court mistakenly relied upon the state court judgments as the "agreement" under which Starion's right to payment of its fees arose.  The BAP found it was undisputed that the promissory notes, mortgages, Workout Agreement and the Starion Addendum contained attorney fee provisions, and those were the provisions under which the claim arose. Id. at 155. The court also  noted that  both the McCormicks  and the bankruptcy court erroneously "intermixed" the two requirements  of § 506(b)–oversecured status and an agreement for fees–because the two requirements need not be contained in the same document. Id. at 155-56.  With regard to the judgment liens, the BAP stated: "The terms of the Workout Agreement also referenced Starion's right to claim its Fees.  The confessions of judgment and subsequent judgment liens merely served as the mechanism to perfect an interest in additional collateral to secure payment of all obligations to Starion." Id. at 156.  The McCormicks appealed that BAP decision to us, and after briefing and argument, we held that we lacked jurisdiction because the bankruptcy court's order was not final.  Instead it left the bankruptcy court with the non-ministerial tasks of resolving the

---

[2]The parties and lower courts all seem to agree that Starion is an oversecured creditor of the McCormicks when the two state court judgment liens are included.  An oversecured creditor is one whose collateral's value is worth more than the amount of its claim.  In re White, 260 B.R. 870, 880 (8th Cir. BAP 2001).

timeliness and reasonableness of the fee request.  In re McCormick (McCormick II), 812 F.3d 659, 661-62 (8th Cir. 2016).

Upon remand, the bankruptcy court found that although the fee request was late, the untimeliness of the request was not a material breach and thus not a bar to Starion collecting fees.  The court then reviewed the reasonableness of the fees requested, and ultimately awarded Starion approximately $83,000 in fees.  The McCormicks appealed to the BAP, which affirmed.  In re McCormick (McCormick III), 567 B.R. 552 (8th Cir. BAP 2017).  The McCormicks appeal, arguing that there was no agreement for fees because Starion did not become oversecured other than by operation of the nonconsensual judgment liens.  They further argue the fee request was untimely.[3]

## II.    DISCUSSION

We review a decision of the BAP as a second reviewing court under the same standard as the BAP–reviewing the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  In re Treadwell, 637 F.3d 855, 863 (8th Cir. 2011).  A secured creditor claiming entitlement to attorney fees and costs in a bankruptcy proceeding pursuant to 11 U.S.C. § 506(b) must establish that it was oversecured and that an agreement or state statute authorized the claim for attorney fees.  Further the fee must be reasonable.  Finally, the claim must also involve an allowed secured claim.  In re White, 260 B.R. 870, 880 (8th Cir. BAP 2001); 11 U.S.C. § 506(b).

---

[3] Although the McCormicks litigated the reasonableness of the fee in the lower courts, as we read the briefing, it does not press this argument on appeal.

## A.     Agreement for Fees

The crux of the dispute in this case is whether there is an agreement providing for fees for the purposes of § 506(b), as informed by the question of whether the two state court judgment liens preclude such an agreement. The McCormicks argue that those judgment liens arose "by operation of law" in state court as opposed to being consensual, and as such, there is not an "agreement," which forecloses the right to attorney fees under § 506(b). See In re Gledhill, 164 F.3d 1338, 1340-42 (10th Cir. 1999) (denying creditor's request for attorney fees under § 506(b) when the only basis for the claim was a judgment lien that arose by operation of law after the note and trust deed providing for fees was reduced to judgment following foreclosure).

Unlike Gledhill, however, in the instant case there are many agreements in which the McCormicks agreed to pay Starion's attorney fees. In addition to the fee agreements in the original notes and mortgages, the Starion Addendum to the bankruptcy plan is yet an another source of an agreement entitling Starion to recover attorney fees. The Starion Addendum was added to the bankruptcy plan well after the state court judgment liens were entered in July 2012; indeed the McCormicks had not even filed bankruptcy at the time the judgment liens were entered. Thus, in addition to the agreements in the notes, mortgages, and the Workout Agreement, an agreement in the confirmed bankruptcy plan provided for the payment of attorney fees incurred in conjunction with the bankruptcy proceeding. See McCormick I, 523 B.R. at 155 ("It is undisputed that the promissory notes, mortgages, Workout Agreement and other documents related to the loans that constitute Starion's claim *do* contain appropriate attorney fee provisions. Those are the instruments under which Starion's 'claim arose.'").

We disagree with any notion that the judgment liens are somehow not part of Starion's secured claim. The judgment liens came about because of the Workout Agreement wherein Starion agreed to forebear on various other (secured) loan

defaults in return for the McCormicks' executing confessions of judgments and providing additional collateral to Starion. Starion filed the confessions of judgments in North Dakota state court, resulting in the judgment liens. Attorney fee provisions were not allowed to be included in these judgment liens by operation of a North Dakota state statute, see N.D. Cent. Code § 28-26-04, but these judgment liens did not simply come out of left field. They were always part of the secured claim between Starion and the McCormicks, and came into being because Starion attempted to work with the debtors to collect on its secured debt, presumably to avoid what now seems was inevitable–bankruptcy proceedings.

The McCormicks argue that because the fee agreements in the original notes and mortgages were reduced to judgment by the North Dakota court, the notes and mortgages "merged" into the judgments, and the judgments entered by the North Dakota state court did not provide for attorney fees. However, as mentioned the North Dakota statute does not allow for fees in such state lien cases, which is why the lien documents did not contain provisions for fees.[4] The allowed secured claim here, as distilled in the Starion Addendum, is the entirety of the dealings between Starion and the McCormicks, and need not be parsed into each of the documents that provided for fees, the Workout Agreement, or the judgment liens. Starion at all times required collateral for the loans it provided to the McCormicks, including in the Workout Agreement. In the final agreement between the parties, the McCormicks again agreed to pay reasonable attorney fees in the Starion Addendum. Indeed, the Starion Addendum is the instrument that most obviously reflects the intent of the parties; it was created in 2013, in response to Starion's objection to the debtors' first

---

[4]However, the North Dakota statute does not govern whether an award of fees is available in this federal bankruptcy case, of course. See In re Schriock Constr., Inc., 104 F.3d 200, 201, 203 (8th Cir. 1997) (noting that the availability of attorney fees was governed by federal, not state law in the bankruptcy proceeding and that North Dakota law had no bearing on whether fees were available to an oversecured creditor).

bankruptcy plan, well after the judgment liens were entered in state court in 2012. After agreeing to the Starion Addendum, "[i]t is disingenuous for the [McCormicks] to now argue that Starion is not entitled to seek fees and costs under the plan after agreeing to do so following a plan objection that specifically raised the issue." McCormick III, 567 B.R. at 559. Accordingly, we find that Starion and the McCormicks had an agreement for fees within the meaning of § 506(b).

## B.     Timeliness

The only remaining issue, then, is the timeliness of the fee request.[5] As noted, the bankruptcy court found that even though the request for fees was submitted after the plan deadline, this was not a material breach of the plan provisions. The court looked to North Dakota law in so deciding, and followed the North Dakota Supreme Court's guidance in relying upon Restatement (Second) of Contracts § 241 and several of its factors to find that the breach was not material in this case because there was no prejudice, the breach was cured almost immediately, and Starion was not guilty of unfair dealing by submitting the request late. McCormick III, 567 B.R. at 559-60. The BAP agreed with this analysis, finding that the McCormicks had shown no prejudice from the late submission and that the agreement did not expressly make "time . . . of the essence." Id. Accordingly the BAP agreed with the bankruptcy court's analysis that the untimely request for fees was excused and not a material breach. Id. at 560.

The McCormicks contest this finding, arguing that the bankruptcy court erroneously relied upon § 241 to determine whether the breach was material. Instead, they argue, the court should have focused on whether time was of the essence in

_____

[5]Although there are myriad dates involved in determining what was the effective date of the plan and when the fee application was due, everyone seems to agree that the fee application was submitted after the deadline.

requiring Starion to submit the fee request by a date certain. Starion argues that because the McCormicks have shown no prejudice from the late submission and because time was *not* of the essence, their untimely application for fees was as a result of excusable neglect. Starion asserts that its counsel reasonably misinterpreted Federal Rule of Bankruptcy Procedure 9006 relating to calculation of time, and that it acted in good faith in submitting its request.

We review de novo the district court's construction of contract terms, including whether time was of the essence. In re Cook, 504 B.R. 496, 502 (8th Cir. BAP 2014). However, the bankruptcy court is in the best position to interpret its own orders. In re Apex Oil Co., 406 F.3d 538, 542 (8th Cir. 2005). We find no error in the bankruptcy court's finding (and the BAP's agreement with the same) that the application for attorney fees, while untimely, was not abusively so, and because no prejudice to the debtors resulted, the fee application was properly allowed.

## III.  CONCLUSION

We affirm the judgment of the BAP affirming the bankruptcy court.

_____