# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 13-6014

_____

In re: Russell Lee Cook, Formerly doing business as RWCK, LLC, Formerly doing business as RWCK Developments, LLC, Formerly doing business as Russell Cook Construction, LLC, Formerly doing business as RWCK Construction, LLC, Formerly doing business as RWCK Quarry, LLC, Formerly doing business as High Mountain Whitetails, LLC, Formerly doing business as Tuscany on the Lakes, LLC, Formerly doing business as The TanStone Group, LLC, Formerly doing business as Cook-Patch Partn, Formerly doing business as Gobblers Nob RE, LLC, Formerly doing business as Table Rock Properties, LLC; Wanda Faye Cook, Formerly doing business as RWCK, LLC, Formerly doing business as RWCK Developments, LLC, Formerly doing business as Russell Cook Construction, LLC, Formerly doing business as RWCK Construction, LLC, Formerly doing business as RWCK Quarry, LLC, Formerly doing business as High Mountain Whitetails, LLC, Formerly doing business as Tuscany on the Lakes, LLC, Formerly doing business as The TanStone Group, LLC, Formerly doing business as Cook-Patch Partn, Formerly doing business as Gobblers Nob RE, LLC, Formerly doing business as Table Rock Properties, LLC

*Debtor*s

-------------------------------

Arvest Bank

*Plaintiff - Appellee*

v.

Russell Lee Cook; Wanda Faye Cook; Russell Lee Cook, as Trustee of the Russell L. Cook Revocable Trust; Wanda Faye Cook, as Trustee of the Wanda F. Cook Revocable Trust

*Defendant*s

Empire Bank

*Defendant - Appellant*

------------------------------

Russell Lee Cook; Wanda Faye Cook

*Cross Claimants - Appellees*

v.

Empire Bank

*Cross Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri - Springfield

_____

Submitted: November 19, 2013
Filed: January 9, 2014

_____

Before SALADINO, NAIL and SHODEEN, Bankruptcy Judges.

_____

Saladino, Bankruptcy Judge.

-2-

Empire Bank appeals from a March 14, 2013, order and judgment of the bankruptcy court declaring that Arvest Bank's judicial lien is superior to the liens asserted by Empire Bank and directing judgment in favor of Debtors, Russell L. and Wanda F. Cook, on their preferential transfer claim against Empire Bank. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse and remand for further proceedings in the bankruptcy court.

## *FACTUAL BACKGROUND*

The pertinent facts are uncontroverted and many are set forth in a stipulation filed with the bankruptcy court. In short, this is a dispute between Empire Bank[1] and Arvest Bank over the priority of their liens on property owned by Mr. and Mrs. Cook.[2] Mr. and Mrs. Cook were engaged in the business of real estate development and condominium construction, and owned interests in various entities, including RWCK, LLC ("RWCK") and Table Rock Properties, LLC ("Table Rock"). Together with their entities, Mr. and Mrs. Cook had lending relationships with both Empire Bank and Arvest Bank.

*Judgment Liens of Empire Bank and Arvest Bank.*

At all relevant times, Mr. and Mrs. Cook owned real property located in Taney County, Missouri, consisting of 809.19 acres, more or less. They also owned a smaller

---

[1]Empire Bank is the successor-in-interest to Citizens National Bank.

[2]For ease of reference, Mr. and Mrs. Cook shall mean Russell L. Cook, individually and as trustee of the Russell L. Cook Revocable Trust dated December 13, 1995, as amended and completely restated on October 30, 2002, and Wanda F. Cook, individually and as trustee of the Wanda F. Cook Revocable Trust dated December 13, 1995, as amended and completely restated on October 30, 2002.

three acre parcel in the same county. On June 19, 2007, Mr. and Mrs. Cook, along with RWCK and other entities, each executed and delivered a guaranty to Empire Bank, under the terms of which they guaranteed to Empire Bank the payment and performance of each and every debt, liability, and obligation of every type and description which Table Rock may owe to Empire Bank. Each guaranty states that it is unsecured.

On or about August 30, 2007, Table Rock executed a $315,000.00 promissory note in favor of Empire Bank, which note was secured by a deed of trust recorded in Greene County, Missouri. On November 8, 2007, Table Rock executed a promissory note in favor of Empire Bank in the amount of $4,200,000.00, which note was also secured by a deed of trust recorded in Greene County, Missouri. Table Rock defaulted on its promissory notes, and Empire Bank foreclosed on both of the Table Rock deeds of trust. Empire Bank then sued each of the guarantors for deficiency judgments on both of the Table Rock notes. The Greene County litigation resulted in a confession of judgment executed by Table Rock, RWCK, and Mr. and Mrs. Cook on September 9, 2011. Empire Bank filed that confession of judgment in the circuit clerk's office in Taney County even though it had not yet been entered as a judgment signed by a judge. On February 14, 2012, the Greene County Circuit Court accepted the confession and entered a signed judgment for Empire Bank against Table Rock, RWCK, and Mr. and Mrs. Cook in the amount of $886,552.64 on Count I and $37,677.36 on Count II, plus interest. A copy of the Greene County judgment was filed in Taney County on February 16, 2012.

After recording its Greene County judgment in Taney County, Empire Bank began efforts to execute on its judgment against Mr. and Mrs. Cook's real estate in Taney County. Before selling the property upon execution, Empire Bank reached a settlement with Mr. and Mrs. Cook. On May 19, 2012, in full satisfaction of its judgment, Empire Bank received from Mr. and Mrs. Cook an assignment of two

promissory notes receivable held by them, one having a value of $517,200.17 and the other having a value of $617,533.45.

In the meantime, on April 14, 2010, Arvest Bank commenced a proceeding in the Circuit Court of Taney County, Missouri, against Mr. and Mrs. Cook and various other individuals and entities, including RWCK, for liability on certain promissory notes and guaranty agreements. On December 6, 2011, the Circuit Court of Taney County entered judgment in favor of Arvest Bank against Mr. and Mrs. Cook, RWCK, and others in the amount of $5,256,296.27, plus interest and attorney fees.

*Empire Bank Deed of Trust.*

Empire Bank is the lender/grantee of a deed of trust granted by Mr. and Mrs. Cook dated October 11, 2007, and recorded on October 16, 2007, in Taney County, Missouri. The deed of trust encumbers approximately 120 acres which are part of the 809.19 acre parcel owned by Mr. and Mrs. Cook in Taney County, Missouri. Among other provisions, the deed of trust provides as follows:

-       Paragraph 2 states that the deed of trust is given "for good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) . . . ."

-       Paragraph 3 states that the total principal amount secured "shall not exceed $375,000.00."

-       Paragraph 4 defines the term "Secured Debt" as follows:

> A.    Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions,

renewals, modifications or substitutions. (When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.). NOTE DATED 10-11-2007 IN THE PRINCIPAL AMOUNT OF $375,000.00 EXECUTED BY RWCK, LLC

☒ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

. . .

B.  All future advances from Lender to Grantor[3] or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. . . . All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. . . .

C.  All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and lender.

. . .

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

---

[3]As used in the deed of trust, "Grantor" is a reference to Mr. and Mrs. Cook, in their capacities as trustees of their trusts which owned the pledged real estate. "Lender" is Empire Bank.

Despite the reference in the deed of trust to a "NOTE DATED 10-11-2007 IN THE PRINCIPAL AMOUNT OF $375,000.00 EXECUTED BY RWCK, LLC[,]" neither the original nor an executed copy of such a note was offered as evidence. An unexecuted copy of the note and an unexecuted copy of a line of credit agreement were received into evidence.

*Arvest Bank's Declaratory Judgment Action.*

On March 30, 2012, Arvest Bank filed a petition for declaratory judgment in Taney County, Missouri, against Empire Bank and Mr. and Mrs. Cook. Arvest Bank asserted that "the Empire Deed of Trust is not supported by valid consideration or any existing indebtedness and, therefore, is a nullity, void and of no effect whatsoever." Arvest Bank also asserted that its judgment lien is prior and superior to Empire Bank's judgment lien as against the real property owned by Mr. and Mrs. Cook in Taney County. Empire Bank and Mr. and Mrs. Cook both filed answers to the petition for declaratory judgment.

On July 12, 2012, Mr. and Mrs. Cook filed their voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri. They subsequently removed Arvest Bank's declaratory judgment action from the Circuit Court of Taney County, Missouri, to the United States Bankruptcy Court for the Western District of Missouri. Mr. and Mrs. Cook obtained leave of the bankruptcy court to file a cross-complaint against Empire Bank to set aside as a preferential transfer their pre-petition settlement with Empire Bank involving the transfer of two promissory notes receivable. As part of that filing, Mr. and Mrs. Cook also sought a declaration that Empire Bank does not hold a valid deed of trust against their property in Taney County, Missouri.

After a trial and post-trial briefing, the bankruptcy court issued its order containing findings of fact and conclusions of law. The bankruptcy court found that

-7-

the Empire Bank deed of trust was not valid for lack of consideration. It also held that even assuming the deed of trust was supported by adequate consideration, it did not secure the obligations of Mr. and Mrs. Cook pursuant to their guaranties signed in connection with the Table Rock transactions. The bankruptcy court further found that Empire Bank's recording of the confession of judgment in Taney County prior to the actual entry of judgment by a court was a nullity. Arvest Bank's judgment was filed in Taney County, Missouri, prior to the filing in Taney County of the signed Greene County judgment in favor of Empire Bank and, accordingly, Arvest Bank's judgment lien had priority over Empire Bank's judgment lien. Finally, the bankruptcy court held that the transfer by Mr. and Mrs. Cook to Empire Bank of their interest in two promissory notes in exchange for satisfaction of Empire Bank's judgment was avoidable as a preferential transfer.

Empire Bank appeals. Empire Bank first asserts that the bankruptcy court erred in holding the Empire Bank deed of trust invalid for lack of consideration. Empire Bank also asserts that the bankruptcy court erred in looking outside the four corners of the Empire Bank deed of trust in finding that, even if it were supported by consideration, it did not secure Mr. and Mrs. Cook's guaranty obligations. Finally, Empire Bank believes that the bankruptcy court erred in its preference analysis when it treated Empire Bank as wholly unsecured.

*STANDARD OF REVIEW*

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997) (quoting *Miller v. Farmers Home Admin. (In re Miller)*, 16 F.3d 240, 242 (8th Cir. 1994)). A bankruptcy court's interpretation of an unambiguous contract is an issue of law to be reviewed de novo. *Sears v. Sears (In re AFY, Inc.)*, 463 B.R. 483, 489 (B.A.P. 8th Cir. 2012). However, interpretation of an ambiguous contract is an issue of fact which is reviewed for clear error. *Papio*

*Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 731 (8th Cir. 2001).

## *DISCUSSION*

Empire Bank first asserts that the bankruptcy court erred in holding the Empire Bank deed of trust invalid for lack of consideration. The bankruptcy court gave two reasons for its holding – Empire Bank did not produce an executed copy of its line of credit note, and the line of credit was never used, so there was never a balance due.

However, under the unique circumstances of this case, Empire Bank was not required to produce an executed note, so its failure to do so does not mean the note was never executed or that it does not exist. Arvest Bank and Mr. and Mrs. Cook made the allegations in their pleadings that the deed of trust was not enforceable due to a lack of consideration; therefore, the burden was on them to prove it by a preponderance of the evidence. *Cobble v. Garrison,* 219 S.W.2d 393, 394 (Mo. 1949); *Bitzenburg v. Bitzenburg,* 226 S.W.2d 1017, 1022 (Mo. 1950). They failed to do so.

The pleadings allege a lack of consideration for the Empire Bank deed of trust, but those allegations appear to be based on the lack of any loan balance due to Empire Bank. Importantly, the pleadings do *not* allege that the underlying promissory note was never executed or does not exist. Further, at no time did anyone testify that the note does not exist or was not properly executed by RWCK. Mr. and Mrs. Cook both testified at trial and never made such a statement. In fact, Mr. Cook was asked: "Now, did there come a time in which RWCK entered into a loan agreement with [Empire Bank]?" He responded with "We did." Regardless, Mr. Cook acknowledged that he and Mrs. Cook both signed the deed of trust. That document expressly states that it was given "for good and valuable consideration" and to secure a "NOTE DATED 10-11-2007 IN THE PRINCIPAL AMOUNT OF $375,000.00 EXECUTED BY

-9-

RWCK, LLC." The deed of trust states that it was for valuable consideration and that there is an executed note. There is no evidence to the contrary. *See, Cobble v. Garrison,* 219 S.W.2d 393, 394 (Mo. 1949) (stating: "A mortgage imports or implies a consideration, and the introduction of the instrument into evidence constitutes prima facie proof it was given by the mortgagor or grantor for a consideration moving to him. Plaintiffs, in their attack on the validity of the deed of trust based on the ground of want of consideration, had the burden of proof.").

Further, requiring a balance due on a line of credit before the deed of trust securing the line becomes valid would defeat the very essence of a secured line of credit. The promise to loan money under a line of credit is itself consideration, regardless of whether the line is ever used. Consideration exists "where there is a detriment to the promisee or a benefit to the promisor." *Kells v. Missouri Mountain Properties, Inc.,* 247 S.W.3d 79, 84 (Mo. App. 2008). In fact, Missouri has a statutory scheme that recognizes the validity of future advance deeds of trust, providing in part:

> Neither the existence nor priority of a security instrument otherwise complying with the provisions of this section shall be adversely affected if at any time on or after the date of such security instrument there are no obligations then secured . . . or the obligations secured by the security instrument are reduced to zero.

Mo. Rev. Stat. § 443.055.2 (2000). Therefore, Arvest Bank and Mr. and Mrs. Cook failed to meet their burden of proof, and the bankruptcy court erred in holding that the Empire Bank deed of trust is invalid for a lack of consideration.

Empire Bank also asserts the bankruptcy court erred in holding that, even assuming the deed of trust was supported by adequate consideration, it did not secure the obligations of Mr. and Mrs. Cook pursuant to their guaranties signed in connection with the Table Rock transactions. Empire Bank's argument is

-10-

straightforward. The deed of trust defines "secured debt" to include all "future obligations of Grantor to Lender" and "all obligations Grantor owes to Lender, which now exist or may later arise . . . ." Such cross-collateralization provisions are sometimes referred to as "dragnet clauses." The bankruptcy court found a latent ambiguity when the language of the Empire Bank deed of trust was considered along with the surrounding circumstances and determined that the guaranty obligations were not secured by the Empire Bank deed of trust.

As a general rule, dragnet clauses are not favored and are strictly construed. *See, e.g.*, *United States v. Fahrenkamp*, 312 F.2d 627, 630 (8th Cir. 1963) (applying Arkansas law); *Bank of Kansas v. Nelson Music Co.*, 949 F.2d 321, 323 n.3 (10th Cir. 1991) (applying Kansas law); *United States v. American Nat. Bank of Jacksonville*, 255 F.2d 504, 507 (5th Cir. 1958) (applying Florida law); *First Trust & Sav. Bank v. Manning*, 311 N.W.2d 285, 299 (Iowa 1981). Courts in Missouri, however, "will enforce a well drafted, properly perfected 'dragnet' clause." *In re Phillips,* 161 B.R. 824, 827 (Bankr. W.D. Mo 1993). Specifically:

> Missouri, perhaps because of its more commercial orientation and less debtor orientated background, has not engaged in such anti dragnet comments. As early as 1933, the Missouri Supreme Court stated that the words: "any other obligation of the undersigned to the payee herein, now existing or that may hereafter arise" created a valid provision which made the collateral pledged on one loan, collateral for other loans between the parties. *See Russell et al. v. Empire Storage & Ice Co.*, 332 Mo. 707, 59 S.W.2d 1061 (1933), l.c. 1070. Moreover, the Eighth Circuit Court of Appeals in *Zuke v. St. Johns Community Bank*, 387 F.2d 118 (8th Cir. 1968) affirmed the Eastern District of Missouri in holding that numismatic coins pledged for a loan were also collateral for a checking account overdraft when the security agreement provided that said collateral secured the payment of all other

liabilities owing by the bankrupt to the bank. *See In re Midas Coin Co*., 264 F. Supp. 193 (E.D. Mo. 1967) for the district court opinion. Thus, the Missouri courts have been more hospitable to "dragnet clauses" than neighboring states and are more likely to enforce them.

*Id.* at 826-27 (footnote omitted). *See also Diamond Bank v. Carter (In re Carter),* 203 B.R. 697, 704 (Bankr. W.D. Mo 1996) (discussing after-acquired property and future advance clauses, holding "the law in Missouri is very clear that such clauses are now enforceable provided the intention of the parties to create such an interest is readily apparent from the language of the document.").

There seems to be agreement that the cross-collateralization clauses in the Empire Bank deed of trust are not patently ambiguous – the deed of trust clearly states that it secures "[a]ll . . . other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced" and "[a]ll obligations Grantor owes to Lender, which now exist or may later arise." Those clauses may be broad, but they certainly are not patently ambiguous. The question is whether the bankruptcy court was correct, as a matter of law, in finding a latent ambiguity.

The Supreme Court of Missouri discussed the rules of contract construction applicable to loan documents in the case of *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359 (Mo. 1991) (en banc). Specifically, the Missouri Supreme Court stated:

> The rules of construction applicable to a guaranty are the same as applied to other contracts. *Industrial Bank & Trust Co. v. Hesselberg*, 195 S.W.2d 470, 476 (Mo. 1946); *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo. App. 1977). The parol evidence rule bars extrinsic evidence, unless an integrated contract is

-12-

ambiguous. *Commerce Trust Co. v. Watts*, 360 Mo. 971, 231 S.W.2d 817, 820 (Mo. 1950). A determination as to whether a guaranty is ambiguous is a question of law to be decided by the court. *Jim Carlson Construction, Inc. v. Bailey*, 769 S.W.2d 480, 482 (Mo. App. 1989).

Ambiguities in written instruments may be of two kinds: (1) patent, arising upon the face of the documents, and (2) latent. *Busch & Latta Painting Corp. v. State Highway Commission*, 597 S.W.2d 189, 197 (Mo. App. 1980). A "latent ambiguity" arises where a writing on its face appears clear and unambiguous, but some collateral matter makes the meaning uncertain. *Boswell v. Steel Haulers, Inc.*, 670 S.W.2d 906, 912 (Mo. App. 1984).

Where ambiguity exists – latent or patent – the cardinal principle is to determine the intent of the parties. *Id.* at 913. In order to determine the intent of the parties a court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties. *Busch & Latta Painting Corp. v. State Highway Commission*, *supra* at 198.

*Id.* at 361-62. *See also Global Network Techs. v. Reg'l Airport Auth. of Louisville and Jefferson County*, 122 F.3d 661, 665 (8th Cir. 1997) (finding latent ambiguity under Missouri law and using parol evidence to determine whether contract had been performed). Stated another way, "a latent ambiguity exists when a writing on its face is unambiguous but surrounding circumstances make it capable of multiple interpretations." *AWM Real Estate Fund I, LLC v. Jefferson Bank of Mo.,* Case No. 09-4149-CV-C-NKL, 2010 WL 3782133 at *5 (W.D. Mo. Sept. 22, 2010) (enforcing a dragnet clause in a deed of trust). Also, "[a] latent ambiguity may be one in which the description of the property is clear upon the face of the instrument, but it turns out

that there is more than one estate to which the description applies; or it may be one where the property is imperfectly or in some respects erroneously described, so as not to refer with precision to any particular object." *University City, Mo. v. Home Fire & Marine Ins. Co.*, 114 F. 2d 288, 295-96 (8th Cir. 1940) (citing *Patch v. White*, 117 U.S. 210, 217 (1886)).

The bankruptcy court held that a latent ambiguity existed because, when considered in conjunction with the language of the guaranty documents and the circumstances surrounding the dealings among the parties, the Empire Bank deed of trust was subject to more than one interpretation. The bankruptcy court's ambiguity holding is a conclusion of law that we must review de novo. *Jim Carlson Construction, Inc. v. Bailey*, 769 S.W.2d 480, 482 (Mo. App. 1989).

Arvest Bank and Mr. and Mrs. Cook argue that a latent ambiguity exists because the guaranty documents (upon which the Empire Bank judgment is based) state that they are "unsecured" and were not modified when the deed of trust was later signed. We disagree. Certainly, the guaranty documents *were* unsecured when they were signed. It was only later that the Empire Bank deed of trust was signed and secured the guaranty obligations through its cross-collateralization clause. The language in the deed of trust does not limit its security only to those obligations that expressly state they are secured by the deed of trust. In fact, it states just the opposite. In the future advance clause, the deed of trust clearly states that it secures "future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument *whether or not this Security Instrument is specifically referenced*." (Emphasis added.)

In any event, the "unsecured" language in the guaranty documents was true when they were executed. The status of the guaranties as unsecured changed when the deed of trust was signed – extending its security to other debts such as the guaranties – but that change in the status of the guaranties is not an ambiguity in the

-14-

Empire Bank deed of trust. In the event of conflicting agreement between the same parties, the later agreement controls. *Burlington Northern Railroad Co. v. Chicago & Northwestern Transportation Co.*, 851 S.W.2d 28, 31-32 (Mo. App. W.D. 1993) (citing *Dill v. Poindexter Tile Co.*, 451 S.W.2d 365, 370 (Mo. App. 1970)); *Berry v. Crouse*, 376 S.W.2d 107 (Mo. 1964).

Arvest Bank and Mr. and Mrs. Cook also point out that even though the guaranty obligations pre-dated the deed of trust, they were not specifically listed in the deed of trust as secured debt. While it is true that there is no specific reference to the guaranty obligations, the clear purpose of the broad cross-collateralization clause is to cover all debt with that single security interest, without having to list each debt separately. It would defeat the clear purpose of the clause to declare the document ambiguous for failure to specifically identify the debt. Mr. Cook's testimony that he was unaware that the deed of trust might secure other obligations also does not make the language in the deed of trust uncertain or subject to more than one meaning. The language is what it is, whether he was aware of it or not.

Finally, Arvest Bank and Mr. and Mrs. Cook point out that Empire Bank did not try to foreclose its deed of trust before executing on its judgment lien and that it filed its proof of claim as unsecured. Perhaps those facts would be relevant if waiver or estoppel were issues presented to the court, but they were not. Regardless, the actions taken or not taken by Empire Bank do not change the actual language of the deed of trust or its meaning. "Even under the latent ambiguity exception [to the parol evidence rule], parol or extrinsic evidence is admissible only to explain an ambiguity, not to change or contradict the language of the written instrument." *Hardin v. Ray*, 404 S.W.2d 764, 771 (Mo. Ct. App. 1966) (citations omitted); *Campbell v. Dixon*, 647 S.W.2d 617, 620-21 (Mo. Ct. App. 1983) (same); *Ironite Prods. Co. v. Samuels*, 985 S.W.2d 858, 862 (Mo. Ct. App. 1998) (quoting *Union Elec. Co. v. Fundways, Ltd.*, 886 S.W.2d 169, 171 (Mo. Ct. App. 1994)) ("Parol evidence is not admissible to prove a condition precedent if the condition varies, negates, or contradicts the

express terms of the writing."). The bankruptcy court's holding that the deed of trust was not intended to secure any other debt obviously changes or contradicts the clear language of the instrument. Extrinsic evidence cannot be used to do so.

Accordingly, we agree with Empire Bank that the language used in the deed of trust – "[a]ll obligations Grantor owes to Lender, which now exist or may later arise" – is not subject to multiple interpretations or uncertain meaning and is not latently ambiguous. The language used in the deed of trust is susceptible to only one interpretation – that the deed of trust is security for all obligations Mr. and Mrs. Cook owe to Empire Bank.[4]

The bankruptcy court also found that the Arvest Bank judgment lien has priority over the Empire Bank judgment lien. Empire Bank did not raise any assignments of error regarding the judgment lien priority holding. Therefore, that portion of the bankruptcy court's holding will not be disturbed. Issues not raised on appeal are deemed abandoned. *Schlehuber v. Fremont Nat'l Bank & Trust Co. (In re Schlehuber)*, 489 B.R. 570, 572 n.2 (B.A.P. 8th Cir. 2013). Finally, since we have determined that the guaranty obligations owed to Empire Bank from the Table Rock transactions were at least partially secured by the Empire Bank deed of trust prior to the settlement between Empire and Mr. and Mrs. Cook, the bankruptcy court's preference analysis must change accordingly.

## *CONCLUSION*

For the foregoing reasons, we reverse the order and judgment of the bankruptcy court and remand for further proceedings consistent with this opinion.

_____

---

[4]Subject, of course, to the secured debt limit set forth in the deed of trust.