# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 15-6012

_____

In re:  Linda Thompson-Rossbach, also known as Linda Thompson, also known as Linda Rossbach

*Debtor*

------------------------------

Linda Thompson-Rossbach

*Debtor - Appellant*

v.

Gene W. Doeling

*Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Fergus Falls

_____

Submitted: October 9, 2015
Filed: December 2, 2015

_____

Before SCHERMER, SALADINO, and NAIL, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Linda Thompson-Rossbach appeals the February 25, 2015 order of the bankruptcy court[1] overruling her objection to the chapter 7 trustee's final report and denying her motion to compel the chapter 7 trustee to abandon $16,893.44 he had received from the Ruth E. Thompson Revocable Trust.  We affirm.

BACKGROUND

On January 16, 2012, Ruth E. Thompson, Thompson-Rossbach's mother, executed a trust agreement that created the Ruth E. Thompson Revocable Trust ("the Trust").  The trust agreement included, *inter alia*, the following provisions:

> 2.3.3 The trustee shall divide all the trust assets not effectively distributed by the preceding provisions of this agreement, including any property that becomes distributable to my trustee at my death, in eight equal shares, one share for each child of mine who survives me, and one share for each child of mine who does not survive me.  My daughter Ruth Elaine Thompson is disabled and has special needs.  The share of my daughter Ruth Elaine Thompson shall be held in trust under the provision of paragraph 2.3.4 below.  My trustee shall distribute to each of my other children one share, or if any of my children do not survive me such child's share shall be distributed per stirpes to such child's descendants who survive me, or if no such descendant survives me, then such share shall be distributed to the distributees taking under this paragraph in proportion to their respective shares.
>
> 4.1.1 Disposition of Certain Assets.  If any assets of my trust become distributable to a person who has not attained age twenty-one (21), such assets, in the discretion of the

---

[1]The Honorable Michael E. Ridgway, United States Bankruptcy Judge for the District of Minnesota.

trustee, may be distributed to such person, or may be retained in a separate trust for such person's benefit. . . .

5.2.1 Governing Law. Except as altered by this agreement, the law of Minnesota shall govern the meaning of this document and the validity, legal effect and administration of my trust. . . .

5.3.4 Spendthrift Provisions. Neither principal or income of any trust nor any beneficiary's interest therein shall be subject to alienation, assignment, encumbrance, appointment or anticipation by the beneficiary, to garnishment, attachment, execution or bankruptcy proceedings, to claims for alimony, support, maintenance, or payment of other obligations by any person against the beneficiary, or to any other transfer, voluntary or involuntary, by or from any beneficiary [provided that any principal distributable to any beneficiary by reason of having attained a specified age shall be fully alienable by such beneficiary after attaining such age].

(Brackets in original.)

Less than two months later, Thompson passed away. At the time of her death, Thompson had eight children, including Thompson-Rossbach, all of whom were over the age of twenty-one; twelve grandchildren, all of whom were also over twenty-one; and five great-grandchildren, all of whom were under twenty-one.

On January 31, 2013, Thompson-Rossbach filed a petition for relief under chapter 7 of the bankruptcy code. Gene W. Doeling was appointed the chapter 7 trustee. In that capacity, Doeling received two distributions from the Trust: an interim distribution of $500.00 in May 2013 and a final distribution of $16,393.44 in December 2013.

When Doeling filed his final report, he included the $16,893.44 he had received from the Trust in the funds he proposed to distribute to Thompson-Rossbach's creditors. Thompson-Rossbach filed an objection to Doeling's final report and a motion to compel Doeling to abandon the $16,893.44. Thompson-Rossbach argued the Trust was a "spendthrift trust" and her interest in it was thus excluded from the bankruptcy estate.

Both matters were heard, and on February 25, 2015, the bankruptcy court issued its oral ruling overruling Thompson-Rossbach's objection and denying her motion to compel abandonment and entered a written order memorializing its oral ruling. The bankruptcy court concluded because Thompson-Rossbach had attained the age of twenty-one at the time of Thompson's death, her interest in the Trust was fully alienable on the petition date and was thus *not* excluded from the estate. Thompson-Rossbach timely appealed.

## STANDARD OF REVIEW

On appeal, Thompson-Rossbach challenges the bankruptcy court's interpretation of the trust agreement. Neither Thompson-Rossbach nor Doeling suggests the trust agreement is ambiguous. Consequently, we review *de novo* the bankruptcy court's interpretation of it. *See Arvest Bank v. Cook* (*In re Cook*), 504 B.R. 496, 502 (B.A.P. 8th Cir. 2014) ("A bankruptcy court's interpretation of an unambiguous contract is an issue of law to be reviewed *de novo*.") (citation therein).

## DISCUSSION

The filing of a petition for relief under the bankruptcy code creates a bankruptcy estate comprising, *inter alia*, all the debtor's legal and equitable interests in property on the petition date. 11 U.S.C. § 541(a)(1). State law determines the nature and extent of a debtor's interest in property. *Butner v. United States*, 440 U.S.

-4-

48, 55 (1979).  However, federal law determines the extent to which the debtor's interest becomes property of the bankruptcy estate.  *Lindquist v. JNG Corp.* (*In re Lindell*), 334 B.R. 249, 253 (Bankr. D. Minn. 2005) (citing *N.S. Garrott & Sons v. Union Planters Nat'l Bank* (*In re N.S. Garrott & Sons*), 772 F.2d 462, 466 (8th Cir. 1985)).

Section 541(a)(1) defines property of the estate broadly and encompasses conditional, future, speculative, and equitable interests of the debtor.  *United States ex rel. Gebert v. Transport Admin. Services*, 260 F.3d 909, 913 (8th Cir. 2001) (citations therein).  This seemingly all-encompassing language is tempered somewhat by other provisions of the bankruptcy code, including § 541(c)(2), which excludes spendthrift trusts[2] from the estate:  "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a [bankruptcy] case[.]"  11 U.S.C. § 541(c)(2).

In this case, Thompson-Rossbach and Doeling agree the trust agreement included a valid spendthrift provision.  They disagree, however, on whether that spendthrift provision applied to Thompson-Rossbach's interest in the Trust on the petition date.

In interpreting the trust agreement, we are guided first and foremost by the language of the trust agreement itself:

> The trustor's intent, *as expressed in the language of the trust*, dominates construction.  If there is no ambiguity in the language when read in light of the surrounding circumstances, extrinsic evidence of the trustor's intent is

---

[2]Under Minnesota law, a spendthrift trust is a trust "in which the power of alienation has been suspended[.]" *Van Dyke v. First Nat'l Bank* (*In re Moulton's Estate*), 46 N.W.2d 667, 670 (Minn. 1951) (citations omitted).

> not allowed.  The reviewing court may not speculate as to what the trustor would have done if he knew of events that occurred after his death.

*In re Trust of Wiedemann*, 358 N.W.2d 139, 141 (Minn. Ct. App. 1984) (citations omitted) (emphasis added).

When we apply the foregoing principles, our reading of the trust agreement comports with that of the bankruptcy court.  The spendthrift provision in ¶ 5.3.4 unambiguously provides, "any principal distributable to any beneficiary by reason of having attained a specified age shall be fully alienable by such beneficiary after attaining such age."

To have been entitled to a distribution under ¶ 2.3.3 upon Thompson's death, a beneficiary had to have attained the age of twenty-one.  Otherwise, pursuant to ¶ 4.1.1, the trustee, in the trustee's discretion, could have either made a distribution to the beneficiary or retained the distribution in a separate trust for the beneficiary's benefit.

Thompson-Rossbach was entitled to a distribution under ¶ 2.3.3 upon her mother's death because she had attained the age of twenty-one at the time.  Pursuant to ¶ 5.3.4, her interest in the Trust was therefore fully alienable by her on the petition date.  Consequently, her interest in the Trust was not excluded from the bankruptcy estate under § 541(c)(2), and both the interim distribution and the final distribution were properly paid to–and properly retained by–Doeling for distribution to Thompson-Rossbach's creditors.

Thompson-Rossbach argues the bankruptcy court's interpretation of the bracketed portion of ¶ 5.3.4 "deprives the introductory language of that paragraph of any real meaning [because] there were no reasonably likely circumstances prior to

[Thompson's] death that one could envision that would make the spendthrift clause applicable." We disagree.

While the circumstances under which ¶ 5.3.4 would have been implicated, *e.g.*, the untimely passing of at least one of Thompson's children and at least one of that child's children, may not have seemed likely, the possibility of those circumstances coming to pass still existed when Thompson executed the trust agreement. And, as Doeling suggests, in ¶ 4.1.1, Thompson clearly contemplated just such a scenario when, knowing all her children and grandchildren were over twenty-one, she nevertheless conditioned a beneficiary's absolute right to receive a distribution on the beneficiary's attaining the age of twenty-one.

Thompson-Rossbach also argues the bracketed portion of ¶ 5.3.4 "was meant to apply to the more likely second scenario, where the supplemental needs trust for [Thompson's] daughter, [Ruth Elaine Thompson], established by Paragraph 2.3.4 of the Trust, terminated sometime in the future and the remaining assets of the supplemental needs trust became distributable [under ¶ 2.3.4.4.6.2[3]] to a minor - a great[-]grandchild or even great-great[-]grandchild of . . . Thompson." We agree the bracketed portion of ¶ 5.3.4 would also apply to that scenario. However, to the extent Thompson-Rossbach is arguing the bracketed portion of ¶ 5.3.4 was meant to apply *only* to that scenario–and that is how we read her argument–we disagree.

Nothing in the language of the trust agreement supports such a restrictive interpretation. If the bracketed portion of ¶ 5.3.4 had been meant to apply only to the supplemental needs trust established for Ruth Elaine Thompson, ¶ 5.3.4 could easily

_____

[3]Pursuant to ¶ 2.3.4.4.6.2, upon Ruth Elaine Thompson's death, "The Trustee shall distribute the entire remaining balance of the [supplemental needs] trust estate as follows: To [Thompson's] descendants, who survive [Ruth Elaine Thompson], per stirpes."

have so provided. It did not. Alternatively, it could easily have been included somewhere in ¶ 2.3.4. It was not.

Instead, ¶ 5.3.4 was included in Article Five of the trust agreement. The introductory paragraph of Article Five unambiguously provides, "In applying the provisions of [the trust agreement], the following shall govern[.]" Paragraph 5.3.4–including the bracketed portion thereof–thus applies to the entire trust agreement, not just to the supplemental needs trust established by ¶ 2.3.4.

Finally, Thompson-Rossbach argues "the special circumstances of . . . [Ruth Elaine Thompson], for whom a supplemental needs trust was created, [Thompson's] very short life expectancy at the time she executed [the] Trust, and the number and ages of [Thompson's] descendants at that time, all are proper 'surrounding circumstances' for [our] consideration." Thompson-Rossbach does not, however, clearly explain how these surrounding circumstances warrant our ignoring the unambiguous language of the trust agreement. In any event, for the reasons discussed above, our consideration of them does not alter our reading of the trust agreement.

## CONCLUSION

Having reviewed the trust agreement *de novo*, we agree with the bankruptcy court: Pursuant to ¶ 5.3.4 of the trust agreement, Thompson-Rossbach's interest in the Trust was fully alienable by her on the petition date, and her interest in the Trust was not excluded from the bankruptcy estate under § 541(c)(2). We therefore affirm the bankruptcy court's February 25, 2015 order overruling Thompson-Rossbach's objection to Doeling's final report and denying her motion to compel Doeling to abandon the $16,893.44 he received from the Trust.

———————————————

-8-