# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 15-6024

_____

In re: Civic Partners Sioux City, LLC

*Debtor*

------------------------------

Civic Partners Sioux City, LLC

*Debtor - Appellant*

v.

Main Street Theatres, Inc.; Main Street-Sioux City, Inc.; Steven Semingson;
Northwest Bank, successor by merger with First National Bank; City of Sioux City

*Objectors - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Northern District of Iowa - Sioux City

_____

Submitted: May 19, 2016
Filed: July 19, 2016

_____

Before KRESSEL, SCHERMER, and NAIL, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Civic Partners Sioux City, LLC appeals the July 8, 2015 order of the bankruptcy court dismissing its chapter 11 bankruptcy case. We reverse and remand.

BACKGROUND

Civic Partners Sioux City, LLC ("Civic Partners") owns commercial real estate, known as the Promenade, in the Historic Fourth Street Redevelopment District of Sioux City, Iowa ("City"). Northwest Bank ("Bank") holds a mortgage against the Promenade and an assignment of rents to secure a promissory note executed by Civic Partners. City also holds a mortgage against the Promenade to secure a promissory note executed by Civic Partners. Main Street Theatres, Inc. ("Main Street") leases and occupies the majority of the space in the Promenade.

Soon after entering into the lease with Civic Partners in 2004, Main Street fell behind on its lease payments. This in turn caused Civic Partners to fall behind on its loan payments to Bank and to City. In 2009, Civic Partners, Main Street, Bank, and City mediated their various disputes.[1] The mediation sessions led to a tentative resolution of the parties' disputes, which was memorialized in a settlement agreement. The settlement agreement was subject to ratification by the city council.

In the settlement agreement, Bank agreed to restructure Civic Partners' loan, City agreed to reduce the Promenade's tax assessment value, and City further agreed to address certain construction defects in public works adjacent to the Promenade. In return, Civic Partners agreed to enter into an amended lease with Main Street that would lower Main Street's annual rent and forgive the back rent owed by Main Street.

---

[1]Another party, Liberty National Bank, also participated in the mediation. However, neither its dispute with Civic Partners nor the resolution of that dispute is directly implicated by this appeal.

In November 2009, Civic Partners and Main Street entered into the amended lease contemplated by the settlement agreement. Civic Partners' obligations under the amended lease were conditioned on Civic Partners' formalizing the agreements with Bank and City described in the settlement agreement on or before January 15, 2010. In the event Civic Partners was unable to do so, the amended lease gave Civic Partners the right to declare the amended lease null and void on or before January 31, 2010.

That same month, Civic Partners was able to formalize the agreement with Bank. Bank's obligations under the parties' restructure agreement were conditioned on, *inter alia*, Civic Partners' formalizing the agreement with City and entering into the amended lease with Main Street described in the settlement agreement on or before December 31, 2009. In the event Civic Partners was unable to do so, the restructure agreement provided the loan modification would be void and without effect.

Civic Partners was not able to formalize the agreement with City: In December 2009, the city council declined to ratify the settlement agreement. Civic Partners and Main Street nevertheless agreed to several extensions of the January 31, 2010 deadline for Civic Partners to declare the amended lease null and void. The last such extension pushed the deadline to March 31, 2011.

In the meantime, in December 2010, Bank commenced a state court lawsuit against Civic Partners. In January 2011, City followed suit.

On March 30, 2011, Civic Partners notified Main Street it was terminating the amended lease. Fifteen days later, Civic Partners filed a petition for relief under chapter 11 of the bankruptcy code.

In July 2012, on Civic Partners' motion to determine whether the original lease or the amended lease controlled, the bankruptcy court concluded the amended lease was still in effect and controlled Civic Partners' relationship with Main Street. The bankruptcy court held Iowa rescission law prevented Civic Partners from terminating the amended lease without returning a $200,000.00 "restructuring payment" it had received from Main Street. Alternatively, the bankruptcy court held Civic Partners could not terminate the amended lease without Bank's consent.

In January 2013, on Civic Partners' motion to reconsider its earlier ruling, the bankruptcy court again held the amended lease was still in effect and controlled Civic Partners' relationship with Main Street. Civic Partners appealed both orders. Because the bankruptcy court's orders were interlocutory, we dismissed the appeal in early February 2013.[2]

In the meantime, in September 2012–after the bankruptcy court first held the amended lease was still in effect, but before it reiterated its holding–Civic Partners filed a "Second Amended and Substituted Plan of Reorganization (Dated September 26, 2012)."[3] While Civic Partners continued to argue the amended lease had been terminated, the plan was predicated on the amended lease, in compliance with the bankruptcy court's earlier rulings. In early October 2013, the bankruptcy court denied confirmation of the plan, in large part because the bankruptcy court determined it was not feasible.

---

[2]While Civic Partners' appeal was pending, the bankruptcy court entered an "Amended Ruling on [Civic Partners'] Motion to Reconsider Withdrawing and Superseding the Court's Opinion/Order Ruling on Motion to Reconsider."

[3]Two earlier versions of Civic Partners' plan had not been confirmed. With certain exceptions, the proponent of a plan may modify its plan at any time either before or after confirmation. 11 U.S.C. § 1127. In some jurisdictions, such modified plans are referred to as amended plans.

Four days later, Bank filed a motion to dismiss Civic Partners' bankruptcy case. The matter was held in abeyance while Civic Partners again appealed several of the bankruptcy court's orders, including its orders regarding the amended lease and its order denying confirmation of Civic Partners' plan. Because the bankruptcy court's orders were interlocutory, we dismissed the appeals in late October 2013. On Civic Partners' further appeal, the Eighth Circuit Court of Appeals did likewise in March 2015.

After the Eighth Circuit Court of Appeals denied Civic Partners' motion for rehearing and for rehearing *en banc* in April 2015, the bankruptcy court held a continued hearing on Bank's motion to dismiss. The bankruptcy court took the matter under advisement and on July 8, 2015, entered an order dismissing Civic Partners' bankruptcy case. Civic Partners timely appealed.

## STANDARD OF REVIEW

We review for clear error the bankruptcy court's findings of fact; we review *de novo* its legal conclusions. *Islamov v. Ungar* (*In re Ungar*), 633 F.3d 675, 678-79 (8th Cir. 2011). We review for an abuse of discretion the bankruptcy court's decision to dismiss a chapter 11 case. *Cedar Shore Resort, Inc. v. Mueller* (*In re Cedar Shore Resort, Inc.*), 235 F.3d 375, 379 (8th Cir. 2000).

> A court abuses its discretion when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors and no improper ones are considered, but the court commits a clear error of judgment in weighing those factors.

-5-

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013).

Our review necessarily includes a review of the bankruptcy court's interpretation of the amended lease, one of the rulings that led to its decision to dismiss Civic Partners' chapter 11 case.[4] In the absence of any suggestion that the amended lease was ambiguous, we review *de novo* the bankruptcy court's interpretation of it. *Arvest Bank v. Cook* (*In re Cook*), 504 B.R. 496, 502 (B.A.P. 8th Cir. 2014).

DISCUSSION

Under Iowa law,[5] our analysis of the amended lease begins and ends with the language of the amended lease.

> The following propositions are deemed so well established that authorities need not be cited in support of them:
>
>  . . .
>
> n. In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says.

Iowa R. App. P. 6.904(3).

---

[4]Our jurisdiction extends to "the events and rulings leading to a final order." *Zahn v. Fink* (*In re Zahn*), 526 F.3d 1140, 1143 (8th Cir. 2008).

[5]Pursuant to ¶ 30.5 of the amended lease, "The laws of the State of Iowa shall govern the validity, construction, performance[,] and enforcement of this Lease."

Paragraph 30.24 of the amended lease provides:

> [Civic Partners'] obligations under this Lease are conditioned upon [Civic Partners'] obtaining (each being a "Condition") definitive agreements: (i) from [City] restructuring [Civic Partners'] existing indebtedness with [City] and real estate taxes for the [Promenade] as more fully described in [the settlement agreement;] (ii) from [City] to remedy the Outside Construction Defects at [City's] expense[; and] (iii) from [Bank] restructuring [Civic Partners'] existing indebtedness with [Bank] for the [Promenade] as more fully described in [the settlement agreement] . . . . If [Civic Partners] is unable to satisfy any one or more of the Conditions on or before January 15, 2010, [Civic Partners] shall have the right (but not the obligation) until and including January 31, 2010 to declare this Lease null and void with written notice to [Main Street]. Upon such declaration by [Civic Partners], the Original Lease shall be deemed reinstated by the parties as if this Lease was never entered into and all payments by [Main Street] under this Lease shall be applied to the Original Lease.

This provision is clear and unambiguous. Because Civic Partners was not able to enter into an agreement–definitive or otherwise–with City, Civic Partners had the right to terminate the amended lease, reinstate the original lease, *and* apply the payments Main Street had made under the amended lease to Main Street's obligations under the original lease.

Civic Partners and Main Street were well within their rights to include such a provision in the amended lease.

> We have here a contract which by its terms is specific. In retaking the property the appellant was but exercising his

-7-

rights under the contract, and upon the exercise of which, by the very terms of the contract, the purchase money already paid was to be considered as rent for the use of the property. The parties had a right to so contract. Upon the exercise of this right in a legal manner, the legal effect is to terminate the contract. It did not amount to a rescission of the contract, but amounted to the exercise of rights under the contract.

*Smith v. Russell*, 272 N.W. 121, 125-26 (Iowa 1937).

When Civic Partners terminated the amended lease, it was simply exercising its contractual right to do so. *Smith* tells us this was not a rescission under Iowa law.

Bank, Main Street, and City nevertheless argue another provision of the amended lease–specifically, ¶ 30.23–required Civic Partners to return the $200,000.00 restructuring payment to Main Street before terminating the amended lease. We disagree.

Paragraph 30.23 of the amended lease provides:

In consideration of [Civic Partners'] entering into this Lease, [Main Street] shall pay to [Bank], on account of [Civic Partners], the sum of $200,000 in immediately available funds (the "Restructuring Payment") as follows: (i) $150,000 on the Effective Date[;] and (ii) $50,000 on or before December 15, 2009. The Restructuring Payment is an obligation of [Main Street] separate and distinct from all other obligations of [Main Street] under this Lease and shall not be a credit against, or otherwise on account of any Minimum Annual Rent, Percentage Rent, Additional Rent or any other sums payable by [Main Street] to [Civic Partners] pursuant to this Lease.

This provision is also clear and unambiguous. Main Street was required to make the restructuring payment under the amended lease, and the restructuring payment was not to be applied toward any other payments Main Street made under the amended lease. Nothing in ¶ 30.23 required Civic Partners to return the restructuring payment to Main Street before terminating the amended lease. Likewise, nothing in ¶ 30.23 prohibited Civic Partners from applying the restructuring payment–and any other payments Main Street made under the amended lease–to Main Street's obligations under the original lease.

Bank, Main Street, and City also argue Civic Partners agreed–in the assignment of rents Civic Partners gave Bank–not to terminate the amended lease without Bank's written consent, which was not given. Civic Partners counters Bank consented–in the restructure agreement between Civic Partners and Bank–to Civic Partners' including in the amended lease its right to terminate the amended lease. Bank's consenting to Civic Partners' having the right to terminate the amended lease, however, is not the same thing as Bank's consenting in writing to Civic Partners' exercising that right.

Civic Partners' failure to obtain Bank's written consent before terminating the amended lease may have been a default under the assignment of rents.[6] Bank's remedies for a default under the assignment of rents are described in that document. However, Bank, Main Street, and City have not identified any provision in either the amended lease or the assignment of rents that, in the event of a default under the assignment of rents, would render ineffective Civic Partners' termination of the amended lease.

---

[6]That is, of course, for the bankruptcy court to determine, if and when called upon to do so.

-9-

Undaunted, Bank, Main Street, and City argue the bankruptcy court held, in the alternative, Bank was "more than an incidental beneficiary" of the amended lease. Under Iowa law,

> in order to have standing to assert a breach of contract, a party not privy to such contract must be regarded as a direct beneficiary to the contract, and not as an incidental beneficiary. That is, he must be regarded as either a donee beneficiary or a creditor beneficiary, as those terms are defined in Restatement, Contracts, Section 133, in order to recover damages flowing from breach of a contract to which he was not a party. . . .
>
> One is a donee beneficiary if it appears from the terms of the promise in light of surrounding circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to beneficiary. One is a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in accompanying circumstances but performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary. One is merely an incidental beneficiary and no rights accrue to him from the contract if he fails to qualify as either a donee beneficiary or creditor beneficiary.

*Peter Kiewit Sons' Co. v. Iowa S. Util. Co.*, 355 F. Supp. 376, 392 (S.D. Iowa 1973) (citations and internal quotation marks omitted).

The bankruptcy court's finding that Bank was more than an incidental beneficiary of the amended lease is not clearly erroneous. The record does not support a finding that Bank was a donee beneficiary: Nothing in the amended lease

or the surrounding circumstances suggests either Civic Partners or Main Street intended to make a gift to Bank. However, the record does support a finding that Bank was a creditor beneficiary, at least to the extent of the $200,000.00 restructuring payment: In ¶ 30.23 of the amended lease, Main Street promised to pay that sum to Bank on account of Civic Partners. Consequently, we agree Bank was more than an incidental beneficiary of the amended lease.

Bank's status as a creditor beneficiary of the amended lease would give it standing to assert a breach of contract and the right to recover damages flowing from the breach. *Id.* For example, if Main Street had failed to make the $200,000.00 restructuring payment to Bank on account of Civic Partners, Bank could have sued Main Street to recover that sum. However, Bank, Main Street, and City have not identified any way in which Civic Partners breached the amended lease. Terminating it was not a breach: As previously discussed, the amended lease specifically gave Civic Partners the contractual right to terminate it.

In deciding to dismiss Civic Partners' chapter 11 case, the bankruptcy court was primarily concerned with the delay and lack of progress in the case and with Civic Partners' failure to confirm a plan. However, much of the delay and lack of progress in the case was directly attributable to Civic Partners' earlier unsuccessful attempts to appeal the bankruptcy court's rulings regarding the amended lease. Constrained by those rulings, Civic Partners was unable to propose a plan that was confirmable, as amply demonstrated by the bankruptcy court's order denying confirmation of Civic Partners' most recent plan. Under the circumstances, the only way for Civic Partners to move the case along was to allow the case to be dismissed and to then seek appellate review of the bankruptcy court's interlocutory rulings.

CONCLUSION

Having reviewed *de novo* the amended lease, we conclude the original lease, not the amended lease, controls Civic Partners' relationship with Main Street. In keeping with its earlier rulings, the bankruptcy court did not consider the possibility that Civic Partners might be able to propose a confirmable plan predicated on the original lease. This is a relevant factor that should be given significant weight in determining whether to dismiss Civic Partners' chapter 11 case. We therefore reverse the bankruptcy court's July 8, 2015 order dismissing Civic Partners' chapter 11 bankruptcy case and remand for further proceedings consistent with this opinion.[7]

———————————————

[7]In light of our decision to remand, we do not reach the remaining issues raised by Civic Partners. We are not expressly or impliedly disposing of those remaining issues; likewise, we are not explicitly or implicitly adopting any of the bankruptcy court's rulings regarding them. *See Stalnaker v. Allison* (*In re Tri-State Financial, LLC*), 519 B.R. 759, 765 (B.A.P. 8th Cir. 2014).